ROCKINGHAM, SEPTEMBER TERM, 1819.

‸‸‸

## JONATHAN L. WHITING *vs.* RICHARD BRADLEY.

If a sheriff, by mistake, sell the personal property of A. on an execution against B., which property had been consigned to B., and then return the execution satisfied to the amount of the sale, B. is still a competent witness for A. in an action against the sheriff.

The return of a sheriff, when erroneous by mistake, may, in certain cases, be amended or vacated, and in some cases may be contradicted.

Under our statute of February 15, 1791, a creditor, whose execution has been levied on either personal or real estate, which did not belong to the judgment debtor, may, by scire facias, obtain a new execution for the amount thus levied.

THIS action was trover for a quantity of merchandize, and was tried here, on the general issue, February term, A. D. 1818.

*Wm. West* was offered as a witness, and, at the request of the defendant, being sworn upon the *voir dire*, answered, that he was not interested in the event of this suit, unless made so by the following facts.

The property described in the writ was deposited with him by the plaintiff, to be sold on commission. The defendant, being a deputy sheriff, afterwards received a writ of attachment against *West* in favor of one *Tucker*, and thereupon, though notified of the plaintiff's interest, seized and removed the property in dispute. After judgment, it was sold, and the proceeds returned by him in part satisfaction on the back of the execution.

The witness further stated, that an adjustment had since been made between the plaintiff and him, that exonerated him from any liability for the goods; but the terms of the adjustment, or the nature of the discharge, were not particularized.

Whiting
*vs.*
Bradley.

On this disclosure, the witness was allowed to be sworn in chief, and a verdict being found for the plaintiff, a motion for a new trial was made by the defendant, on the ground, that *West* was an incompetent witness.

*Green,* counsel for the plaintiff.

*Thom & Mason,* for the defendant.

WOODBURY, J.   It is probable, that by inadvertence the witness did not produce a release from the plaintiff; or, if no technical release existed, that he did not disclose with more minuteness the terms of their settlement.   But, on that part of the case, as it now stands, we might be inclined to hold him competent, without an examination of the other facts, had not all the counsel argued his admissibility solely upon those facts.   Upon those facts, therefore, we shall consider the question ; and if, on inquiry, it shall appear, that the success or failure of either party in this suit would, according to those facts, leave the witness under similar liabilities, his interest was balanced, and he was properly admitted.(1)

(1) 11 John.
181.

In the first place, then, the success or recovery of the plaintiff in the present action would exonerate the witness, if not already duly discharged, from any future liability to the plaintiff for the same goods.(2)

(2) 1 N. H.
Rep. 189
Chesley vs. St.
Clair.

While, on the contrary, a recovery by the defendant in the present suit would, also, leave the witness exonerated from any future liability to the creditor for the amount of these goods, heretofore sold and endorsed on his execution.

In the second place, it may be admitted, though a point somewhat questionable, that a failure by the plaintiff to recover in the present action, would subject the witness to pay the plaintiff the value of the property consigned.

While, on the contrary, if a failure by the defendant to recover in the present action, would subject the witness to pay the creditor the amount of these goods heretofore improperly sold and endorsed on his execution, the interest of the witness still remains equally balanced.

But it has been contended, with great ingenuity and zeal, that the return on the creditor's execution forever bars the creditor from again enforcing his judgment to the amount

endorsed on the execution ; and if this objection be well founded, the witness was probably incompetent.

To meet this objection in the most clear and distinct form, the creditor and not his agent, the deputy sheriff, may be considered as the defendant in the present action.

It will then be manifest, that by a recovery against the defendant, all, which was received on the execution from the sale of these goods, must be paid over to *Whiting ;* and, after that event, if the creditor be barred by the return from collecting of the witness the sum endorsed, that portion of the judgment against the witness will be discharged without the payment of any thing by the debtor, or the eventual receipt of any thing by the creditor.

The debtor parts with neither money nor goods ; and the creditor obtains only the property of a stranger, which he is afterwards compelled to restore.

If the creditor be thus barred, a conclusion so apparently unjust, can be supported only by some technical principle, whose foundation upon general reasons is too firm to be shaken, and whose nature is too inflexible to admit any equitable exceptions.

In this case, the return on the execution states, that the property sold was the debtor's ; and though now it appears, that this statement originated in a palpable mistake as to the facts ; yet it is argued, that the return is a record, that it cannot be impeached, and hence, wherever may have been the title of the property, the judgment must be held satisfied to the amount endorsed.

It is doubtless true, that an officer's return often becomes a " parcel of the record."(1) But it does not possess " the " incontrolable verity," attributed by Lord *Coke* to other records. (1 *Insti.* 226, *a.* 186, *a.* 39, *a.*—2 *Insti.* 573.—4 *Insti.* 138.) It can always be impeached when directly in issue ; and though the general principle is, that it cannot otherways be impeached ; (*Bac. Ab.* " *Sheriff,*" *N.* 4.—4 *D. & E.* 633, *Farr vs. Newman.*—1 *Burr.* 37, *Cooper et al. vs. Chitty.*—6 *Mass. Rep.* 327.—7 *Mass. Rep.* 391.—9 *Mass. Rep.* 141.—8 *John.* 188.) and though this principle be found-

(1) 2 Saund. 2 note, Mildway vs. Smith et al.

ed on sound policy, yet many cases fall not within the scope of its policy, and constitute well established exceptions to the general principle.

Some of these exceptions are enumerated and illustrated in *Lewis vs. Blair ;*(1) and a few of them, together with the case cited, are instances in which the officer himself was permitted to contradict certain parts of his own return.

(1) 1 N. H. Rep. 68.

It is, also, daily practice to permit third persons to do this, in actions too, not upon the return itself, but against purchasers of their property, when seized and sold on precepts not against those third persons. *Blood vs. Holden, Cheshire, ss. Oct.* 1818.—1 *Burr.* 22, 32, *Bloxham vs. Oldham et al.—Doug.* 40 *to* 43, *Alworth vs. Kemp.*

In those cases, the return states the property to have belonged to the judgment debtor; but the real owner is always permitted in trespass or trover to contradict that allegation.

The same principle applies to the returns of extents on real estate.(2)

(2) Bac. Ab. " Elegit."—9 Mass. Rep. 99.

The only remaining inquiry is, whether persons, who claim under a return, or who procured it to be made, can either contradict, amend, or avoid it.

The better opinion seems to be, that a purchaser of personal property, sold under execution, may prove the levy and sale to have been in fact legal, and will then be permitted to retain the property, whether the officer's return be true or false, formal or informal. 1 *John. Ca.* 153.—4 *Wheat.* 50, *Wheaton vs. Sexton.*—8 *Mass. Rep.* 326.—[17 *Mass. Rep.* 243.]—*Sed.* 9 *Mass. Rep.* 138, 242.

As the officer himself is not obliged to show any return whatever of final process, in order to justify a seizure of personal estate, (10 *East* 73, *Cheasley vs. Barnes et al.*—4 *Leon.* 194.—5 *Coke* 90.—*Cro. El.* 209, 238.—*Str.* 1184.—*Cowp.* 20, *Rowland vs. Teale.*—6 *Coke* 52.—*Salk.* 700.—*Mitford Pl.* 115.—8 *John.* 52, *Beals vs. Guernsey.*—2 *Chitt. Pl.* 588, *note*) there seems to be no very good reason for charging even him on an informal return, if the levy and sale can in fact be proved to have been legal.(3)

(3) Sed. 7 Mass. R. 388.

The title in these cases is not like the title to real estate, extended on execution, a *title by record ;* and hence a return in all cases indispensable, and the title to be proved only by the record, or in other words, by the return.    1 *N. H. Rep.* 372.—*Com. Di.* " *Retourn,*" *F.*—4 *Coke* 67, *a.*—5 *Coke* 90, *Hoes Ca.*

It seems, likewise, to be an established practice to permit a return on mesne process, if erroneous through mistake, to be amended on the motion of any party in interest; and this has been done as well after as before the record in the action is made up.(1)

In subsequent suits concerning the property mentioned in such return, the statement as to the title of the property has repeatedly been contradicted by parol evidence on the part of the officer, and those claiming under him.(2)

The verity of the most sacred records is not always incontrolable, where caused by a clear mistake in fact.

Thus, the date of writs may be contradicted, and the true time of their issuing shown by parol evidence.    1 *Wm. Bl.* 218, *Johnson vs. Smith.*—1 *Burr. S. C., and authorities there cited.*    Thus a satisfaction on the record, when entered by mistake, may be vacated on motion of the creditor.(3)

Thus, after a return of *cepi corpus* on final process, which, in law, is a technical satisfaction of the debt, the creditor may have a new execution if the debtor die or escape ; because, says *Coke,*(4) " it would be mischievous for the plain-" tiff to lose his debt without any default in him ; and no " mischief if a new execution be done."(5)

As little would be the mischief here, were a new execution to issue against the debtor for the sum endorsed by mistake as paid by the sale of his goods ; and in *Denton vs. Livingston,*(6) where the sheriff was allowed to contradict his return as to the value of the goods seized, *Kent, Ch. J.* expressly says, that " the judgment ought not to be consider-" ed as satisfied" in respect to the original defendant, if the property, " seized and returned, be found not to belong" to him.

**Margin notes:**

Whiting *vs.* Bradley.

(1) 5 John. 163, Williams vs. Rodgers.—11 Mass. Rep. 418, Thatcher et al. vs. Millar.

(2) 4 Mass. Rep. 498.—12 ditto 163.—13 ditto 225.

(3) 2 John. Ca. 121.*

(4) 5 Coke 87, Bloomfield's Case. (5) Com. Dig. " Execution," H.

(6) 9 John. 99.

---

* 19 John. Rep. 246, Bank vs. Minthorn.

Whiting
*vs.*
Bradley.

(1) 1 Burr.
Supra.

Many of the arguments urged against this conclusion are, in the language of Lord *Mansfield*.(1) " drawn from rules and " maxims similar in sound, but not in meaning."

On the contrary, no authority directly in point in favor of this conclusion has been discovered ; some of the analogies cited are remote ; and the practice at common law seems to have been in cases resembling the present, to resort to chancery for relief.(2)

(2) Mitford Pl. 114, 5.—1 Pier. Wms. 445.—2 Atk. 200.—1 Vern. 398.

It becomes expedient, therefore, to examine the statutes which relate to this subject.

The 32d Henry VIII. gave to creditors a new execution, when the first one had been extended on *land*, which proved not to belong to the judgment debtor. But it says nothing concerning levies upon personal property. This may have arisen from the circumstance, that creditors in such cases could already, at common law, obtain a new execution, or sustain debt on their judgments ; but in extents were prevented from doing this, because the title to land appeared on record, and could be accepted or refused in satisfaction of a debt at the peril of the creditor. Some have contended, however, that in respect to extents, this statute is only declaratory of the common law.(3)

(3)Cr. Ja. 693, Clark vs. Andrews.—Sed. 4 Coke 66.—5 Coke 87.–Bac. Ab. " Execution." D.

But, be that as it may, it is certain, that, unless, in the case of levies, there was relief either at common law or in chancery, this statute introduced a distinction in favor of extents altogether invidious and unjust.

(4) 1 N. H. Laws 183.

Our own statute of February 15, 1791,(4) is much broader in its language ; and as we possess no court of chancery, it is, perhaps, fortunate for the interests of creditors, that a construction can be given to it embracing both levies and extents.

The 5th section provides, " that when execution shall be " levied on any estate for the purpose of satisfying such ex- " ecution ; and, after the levying thereof, it shall appear that " such estate levied upon did not, at the time of levying, " belong to the debtor, then and in every such case, upon " the application of the creditor to the court or justice from " whom such execution issued, such court or justice may

" order a writ of *scire facias* to issue against such debtor," to show cause why a new execution shall not be had, &c.

This statute both permits the return, so far as it states the property to have belonged to the debtor, to be impeached, and prescribes a mode of doing it. An impression has prevailed, that the above section was a substantial copy of the 32d Henry VIII. ; and the learned editor of our statutes has in the margin,(1) entitled it " a remedy when *lands* extended did not belong to the debtor." But the English statute itself mentions only " land," and in express terms is limited to " extents."(2) While our statute neither contains the words " land" nor " extent," but employs the more general terms, " estate" and " levied." It also speaks of executions issuing from a " justice ;" and at that time no such executions were extended upon " land."

(1) 1 N. H. Laws 183.

(2) Vide authorities, ante.

The probability is, that this section was compiled with more immediate reference to a colonial law, passed during our union with Massachusetts, in A. D. 1674, and to the practice under that law.

The colonial law provided, " if any party, that hath ob-" tained an execution, shall adventure to *levy* the same upon " *lands*, houses, or *goods* of the person against whom the " judgment was granted ; and the execution be returned ac-" cording to law ; if it appear the said houses, lands, or " goods [were not] of the said parties, against whom the " judgment was given, the party that was so *mistaken*, mak-" ing the same to appear to the court that granted the judg-" ment, the said court shall order a new execution for satis-" fying the judgment, notwithstanding the former execution " returned."(3)

(3) Colonial Charters 142.

The words " levied" and " estate" being more generic and comprehensive, were undoubtedly inserted in our present statute with a view to include every species of property seized on execution, and every mode of disposing of it.

On the hypothesis, then, that the original creditor were the defendant in the present action, the interest of the witness would clearly be balanced.

But changing the defendant from the creditor to the sheriff, who acted under him, does not change the ground of recovery in the present action, nor the legal liabilities of the witness in consequence of that recovery. In either case, the recovery is on the ground, that the goods did not belong to the witness; and if that be the fact, the witness is liable to a new execution for the sum endorsed, whether the creditor or sheriff be the defendant in the present action. His liabilities depend upon that fact alone, and not upon the names of the parties in the present action.

If the creditor should not choose to bring a scire facias; because not bound to indemnify the defendant, or not honorable enough to do it when unbound, or from any other cause, this circumstance is accidental, and does not disprove or discharge the actual liability of the witness.

It is not necessary to decide whether the sheriff, if he holds no contract of indemnity, can obtain redress from the witness or the creditor.

Reasons exist in England, all of which are not applicable here, that would seem to bar him, after his return, from any redress, except upon a contract of indemnity.(1) Because, there, if doubts exist as to the title of the property seized, he may summon a jury to settle the fact.(2) If they settle the fact against the creditor, the sheriff, though not excused from proceeding to sell, (3 *Maul & Selw.* 175–6, *Glossop vs. Pole*) is justified in first requiring an indemnity.(3) Or he may have the time for his return of the precept enlarged; or may deposit the proceeds of the sale in court, to be detained till further inquiry.(4)

If he has adopted none of these precautions, and if the creditor does not voluntarily indemnify him, nor permit him to bring a scire facias in the name of the creditor against the debtor, he may be remediless.

But even then his situation would be no worse than that of any joint trespasser, who, after delivering to his co-partner all the fruits of the trespass, has the misfortune to be sued alone for the *tort*, and has no remedy over for contribution. 2 *Com. Con.* 190.—8 *D. & E.* 186, *Merry et al. vs. Nixon.*

(1) 4 D. & E. 633.—1 Burr. 37.—3 John. 188.
(2) 6 D. & E. 88.
(3) 15 John. 147.
(4) 1 Burr. 34, 37.—3 John. 139.

The severity of this rule, however, is often evaded, and mitigates by slight circumstances. *Vide* 2 *John. Ca.* 52.— 17 *John.* 142.

As the court were about to enter judgment on the verdict, the parties, having effected a compromise, agreed to dismiss the action.