## JONATHAN HOWARD *vs.* SETH DANIELS.

In the return of a writ by which land has been attached, the description of the land is sufficient, if by such a description the land would pass in a deed. But in an extent, the description of the land set off must be more particular.

If the proceedings, in making an extent, are not stated truly, the redress is by an action against the sheriff for a false return; but the extent itself is valid as between the parties and their privies, unless defective on its face, or contaminated with fraud. If the appraisers were governed by the opinion of the parties in their estimate, and a small inadequacy appears to have existed between the debt and the value of the land, those circumstances alone are not competent evidence to avoid the extent for fraud.

When the extent alleges that the proceedings were commenced within thirty days after judgment, though some of them appear not to have been completed till afterwards, yet they all relate back to the time the first were commenced.

THIS was a writ of entry for a tract of land in New-Chester.

The cause was tried here November Term, 1818, on the general issue, as to a part of the demanded premises.

The demandant offered as evidence of title in that part the extent of an execution upon it, which had issued on a judgment in his favor against *Moses Lewis*, recovered November term, 1812, for $4061 85 debt, and $41 30 cost.

The return of the officer on the writ of attachment, which was the foundation of that judgment, bore date August 17th, 1808, and alleged that he had attached " the farm the de-" fendant now lives on, with his tannery, &c. thereon."

It was admitted, that the premises in dispute then constituted a portion of said farm and tannery. The execution on the above judgment issued November 7th, 1812, and on the 27th of the same month, the officer returned, that the extent was commenced; and all the subsequent proceedings in legal form were inserted under that date, except the oath to the

18

appraisers, which purported to have been administered February 4th, 1813.

The tenant then proposed to prove, that these premises were mortgaged to him by *Lewis*, May 16th, 1812, and that the mortgage had since been foreclosed; that though three appraisers were duly selected and sworn to set off the land in November, 1812, yet that they disagreed concerning its value, and by mutual consent of the parties being discharged, new appraisers were chosen and qualified in February after; and that these last appraisers, though they entered on the premises and were acquainted with their value, took as a guide in their estimate, the opinion of the parties themselves upon the value, when in fact, according to the opinion of some other persons, the land set off was worth from five to seven hundred dollars more than the amount of the plaintiff's judgment. But it did not appear, that any offer had been made by *Lewis* or the tenant to redeem the extent; or that *Howard*, who resided in Boston, (Mass.) was related to *Lewis*, or on terms of particular intimacy with him; or, at the time of the extent, was acquainted with the existence of the tenant's mortgage.

It was admitted, that *Lewis* had a wife of about forty years of age, who was entitled, in the event of his death, to dower in the premises.

Under all these circumstances, the evidence on the part of the tenant was rejected as incompetent, and a verdict taken for the demandant, subject to further advisement.

*E. Webster*, counsel for the demandant.

*J. Smith*, for the tenant.

WOODBURY, J., delivered the opinion of the court.

The first objection to the recovery of the demandant is, that the description of the land in the return of the writ against *Lewis* was so general, no lien upon the land was acquired under the attachment. This objection, if well grounded, is fatal to the present action. Because, in that event, the demandant would acquire only the title *Lewis* owned at the date of the levy, in November, 1812; and as he then

owned only the equity of redemption, the demandant, though the mortgage had not since been foreclosed by the tenant, would be unable to sustain against him a writ of entry without proving a previous tender or payment of the mortgage money.(1)

But we are inclined to think, that the description of the land in the return of this writ was sufficient to answer the purpose intended by an attachment.

The object of an attachment is not, as in case of extents, to pass the title ; in which last case both our statute and the common law seem to require a description by " metes and " bounds." 1 *N. H. Laws* 182.—4 *Inst.* 318.—2 *Tidd.* 940. —*Doug.* 475, *Den vs. Abingdon.*—1 *Barn. & Ald.* 40.—11 *John.* 365.—13 *ditto* 97, 537.–9 *Mass. Rep.* 92.—11 *ditto* 515.

But it is merely to caution the public and the debtor, that the land attached is intended to be considered by the creditor as eventual security for his debt. A description of it, therefore, as " the farm the defendant now lives on, with his tannery, &c. thereon," could not fail to apprise the defendant and all others in interest what premises were intended. Our statute concerning attachments does not, like that concerning extents, require the " metes and bounds" of the land to be set out ; and in deeds, where the title itself passes, the same certainty contained in this return suffices ; for there the rule always is *id certum est, quod certum reddi potest. Com. Di. " Grant"* E. 13.—*Bac. Ab. " Grant"* H.—5 *East* 51.— 7 *John.* 217.—11 *John.* 365, *Jackson vs. Delancy.*—4 *Mass. Rep.* 205.—10 *Mass. Rep.* 19, 20.

The next objection relates to the validity of the extent.

The only supposed defect, apparent upon its face, is, that the oath to the appraisers was not administered till more than thirty days after judgment against the debtor ; and, therefore, that the attachment was dissolved. But the return is dated within the thirty days ; the extent is alleged to have been at that time commenced, and hence all the subsequent proceedings operate back to that date. 1 *Barn. & Ald.* 230, *Stevens vs. Donstan.*—13 *John.* 251, *Wylie vs.*

Howard
*vs.*
Daniels.

(1) 1 N. H. Rep. 171, Brown et al. vs. Cram.— 332, Swett vs. Horn.

(1) 1 N. H.
Rep. 372, Sul-
livan vs.
M'Kean.

(2) 11 Mass.
Rep. 468.

(3) 9 Mass.
Rep. 270.—
1 N. H. Laws
182.

*Hyde.*—9 *John.* 117.—2 *Binney* 80.—6 *Mass. Rep.* 20.—9 *Mass. Rep.* 393.

The evidence offered to impeach the extent for defects not apparent on its face was rejected for the following reasons.

Extents, when returned, become records ;(1) and they are not to be impeached by parol evidence, by a party, except in a scire facias for a new execution under our statute, or in an action against the sheriff for falsehood in his return ;(2) and by third persons, only when they have been defrauded by the extent,(3) or, claim title to the premises not under either party to the extent. 1 *Burr.* 34.—9 *Mass. Rep.* 99, *Bott vs. Burrell.*—14 *Mass. Rep.* 29.

As this tenant claimed title under one of the parties to the extent, the evidence was in no view admissible, unless, under all the circumstances, it was competent to prove a design in those parties, by means of the extent, to defraud the creditors of *Lewis.*

The tenant was among the number of those creditors, and insists, that the mode of appraising the land and the increased value of the land over the debt were pertinent testimony to show such a fraudulent intent.

But the mode of appraising the land was only an informality, and was perfectly natural, when it is recollected, that the claim was large, and the appraisers, who were first chosen, disagreed in opinion about the value. Such informality, therefore, was not in itself competent to prove fraud.

The other evidence concerning the consideration would have been relevant, had the difference between the debt and the value of the land been greater. Our statute of February 15th, 1791, does not in terms avoid conveyances in behalf of creditors, if " made for good and valuable consideration, " truly paid or secured to be paid."(4) And it is well known, that the goodness and value of a consideration depends in law upon its quality and not its quantity. 1 *Pow. Con.* 361.—2 *Bl. Co.* 297, 444.—1 *Com. Con.* 8.

But under the 13th of Elizabeth courts have very properly held, that when the consideration agreed upon was great-

(4) 1 N. H.
Laws 182.

ly inadequate to the value of the property, this circumstance raises a suspicion, that the consideration has not been paid or secured as a permanent transaction, but only as a temporary expedient or finesse to deceive creditors.

The cases reported of such inadequacy are where £200 have been agreed upon, when the estate was worth £2000; or only £500 agreed upon when the estate was worth that per annum. *Cowp.* 706.—*Cr. El.* 445.—8 *D. & E.* 529, *Nunn vs. Witsmore.*—*Rob. Fr. Con.* 14, *Preface.*

But here the estimate varied from the supposed true value only five or seven hundred dollars, in an estate worth over four thousand dollars. It is well known, also, to every person acquainted with the prices of real property in this section of the country, that they are very fluctuating, and that this circumstance would be likely to strike the parties more sensibly in a period of war, such as existed at the time of this extent. Different persons, when called as witnesses, constantly differ among themselves more than the proportion of this inadequacy, in their estimate of buildings and cultivated land. Their estimate of the risk of dower alone in the premises would be likely to differ more than quadruple the proportion of this inadequacy, which is about one-seventh of the whole consideration.

The demandant, too, was a merchant, residing at a distance, to whom the land would appear less valuable than it would to farmers in the neighborhood. It would be destructive of half our conveyances if, after a lapse of seven years, it was competent to avoid them by evidence of the naked fact, that the consideration paid may have been one seventh too low. For instance, that only six dollars were paid, when the true value was perhaps seven dollars.

Indeed, there was not only an absence of the other circumstances usually attendant on fraudulent transactions, such as relationship and confidence between the parties, for the bad intent must exist in both ;(1) but there was, in the very nature of the conveyance, what tends to rebut every presumption of fraud. The tenant had the power to redeem the land, if estimated too low, and thus defeat any covenous at-

(1) Justin. Inst. b. 1, t. 6, s. 3.— 14 John. 493, 498.—4 Wheaton 466.

tempt; and the extent having been public and recorded, it is highly probable, if the estimate was in truth too low, that the tenant, or some other creditor of *Lewis*, would actually have redeemed the land, and thus availed himself of any difference between its value and the debt of the demandant.

*Judgment on the verdict.*