IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT, JULY TERM 1840.

## Freeman *against* Caldwell.

10w     9<br>f 36 SC 279

The principle that in judicial sales there is no warranty, is applicable to sales of personal, as well as real, property. Hence, a judgment is satisfied by a levy and sale of goods to its amount, under a *fieri facias*, although the title of the plaintiff, who was the purchaser thereof, be subsequently defeated in an action of replevin.

ERROR to the common pleas of *Lycoming* county.

James D. Caldwell against Brewster Freeman. The plaintiff obtained a judgment against the defendant for 854 dollars 36 cents, upon which the defendant paid 400 dollars. A *fieri facias* subsequently issued for the balance, which was levied upon thirty-two head of cattle as the property of the defendant, but which were claimed by a third person. The, sheriff, however, proceeded and sold the cattle, for an amount sufficient to pay the balance of the debt, and they were purchased by the plaintiff in the execution. Subsequently, John Pfoutz and John A. Gamble brought an action of replevin for the cattle against James D. Caldwell and recovered them. The plaintiff then issued this *scire facias*, upon his original judgment, to show cause why he should not have execution for the balance due thereon previously to the issuing of the *fieri facias* upon which the cattle were levied and sold. The court below in-

x.—B

[Freeman v. Caldwell.]

structed the jury, that the defendant was not entitled, under the circumstances of the case, to a credit for the amount of the proceeds of the sale of the thirty-two head of cattle. And this opinion was assigned for error.

*Armstrong* and *Campbell,* for plaintiff in error, cited 2 *Kent's Com.* 370, 473; 5 *Serg. & Rawle* 223; 9 *Serg. & Rawle* 162; 11 *Serg. & Rawle* 138; 2 *Bay* 171; 6 *Watts* 229; 5 *Peters' Cond. Rep.* 709; 9 *Wheat.* 616; 4 *Serg. & Rawle* 246; 2 *Rawle* 206; 1 *Watts* 425; 4 *Cowan* 65; 14 *Mass. Rep.* 57; 2 *Watts* 453; 6 *Watts* 400; 2 *Watts* 147; 13 *Serg. & Rawle* 60, 96.

*Parsons* and *Greenough, contra,* cited 17 *Serg.* & *Rawle* 436; 8 *Serg. & Rawle* 457; 5 *Cowan* 280; 9 *Johns.* 99; 4 *Day* 222; 3 *Littell* 435; 2 *New Hamp. Rep.* 72; 2 *Bac. Ab.* 701; 2 *Bay* 67; 1 *Rawle* 302; 1 *Johns. Chan.* 410, 515; 2 *Dall.* 115; 3 *Yeates* 268; 7 *Watts* 308; 5 *Cowan* 280.

The opinion of the Court was delivered by

GIBSON, C. J.—In judicial sales there is no warranty. The principle is universal, but particularly recognised by us in judicial sales of land, which we treat as a chattel for payment of debts; and it is of course equally applicable to the judicial sale of a chattel pure. What interest in it does the sheriff propose to sell? Not a title to it, but the debtor's property in it, whatever it may be; and the vendee, where the thing has been recovered from him, has no recourse to the price of it in the hands of the sheriff or the creditor's pocket. In the case of the Montallegre, 9 *Wheat.* 616, it was ruled, that a loss sustained by the marshal's vendee of a rotten article, sold by a sample with which it did not correspond, should not be made good out of the proceeds in court. Why shall not the same principle be applied to a purchase by the judgment creditor himself? By his bid he may have prevented a sale to a stranger who could have had recourse to no one; and thus have deprived the debtor of the benefit of his doubtful title, which may have been a legitimate subject of value. In the one case and in the other, the produce of it has, in contemplation of law, been brought into court and distributed; and the matter has consequently passed *in rem judicatam.* In Canon *v.* Smallwood, 3 *Lev.* 203, it was said *arguendo* that though the sheriff may pay directly to the plaintiff, his license, in that respect, is by permission of the court, and not by force of the law: and to the same effect is Wortman *v.* Conyngham, *Peters' C. C. Rep.* 243. Indeed, the very command of the writ makes it the sheriff's duty to return it. Even when the plaintiff is the purchaser, he is supposed to have paid the price in the first instance, and to have received it back under an order of the court. It is a trite but invaluable maxim, and of course conclusive evidence of the law, that when different rights or characters exist together, they are to be

[Freeman v. Caldwell.]

treatèd as if 'they existed separately—*cum duo jura in una persona concurrunt æquum ac si essent in diversis*—from an application of which, it results in the case. before us, that had the original judgment been reversed, the price, and not the cattle, would have been restored.    For the same reason the judgment creditor might have been compelled to pay the sheriff surplus purchase money, had there been any, nor could he have recovered it back from the debtor after the sheriff had paid it over.   'It is not pretended that either party might not hold the other to the sale as to that; but the plaintiff asks to treat the execution, and the property levied in satisfaction, as a shopkeeper treats a bad note; and to proceed as if the whole were a nullity.    But if want of consideration may be set up to annul a part of the sale, why might it not be set up to annul the whole.   There is no foundation in reason or justice for a distinction. Thus stands the question on principles of analogy; and how stands it on the authorities cited to us as in point?

Adams *v.* Smitb, 3 *Cowan* 280, was a motion to amend by striking out the amount of sales endorsed on the execution to make way for an *alias;* which, it will be perceived, involved no more than an exercise of judicial discretion, which in that case seems to have been a pretty sharp one.    Yet even that case concedes the necessity of getting the sheriff's return out of the way of a fresh proceeding.   In Lansing *v.* Quackenbush, *Ibid.* 38, the court refused leave to amend in the case of land, on a supposition that the purchaser could be relieved only in equity; though, how a chancellor could rescind a judicial sale by a common law court aud at the instance of a purchaser who had taken the risk of the title, can be known only to those who are familiar with the practice in that state.    Still the question regarded amendment, and no one dreamed of treating the return as a nullity.    In Stoyel *v.* Cady, 4 *Day* 222, there was neither return nor sale, but payment extorted by an illegal levy, which was of course discharged by the receipt of the debt.    None of those cases, then, resemble the present; and in Whiting *v.* Bradley, 2 *N. H. Rep.* 79, in which the *scire facias* was founded on a statute, every thing said by the judge who delivered the opinion of the court in relation to the principle of the common law, was extrajudicial, and, it seems to me, without foundation in authority.    That the return on a *fieri facias* is always parcel of the record, is unreservedly asserted in 2 *Saund.* 344, n. 2; and that it is conclusive betwixt the parties, is as plain, from the assertion that *nil debet* can not be pleaded to an action of debt on it.    It may, indeed, be impeached, when put in issue; but can it ever be in issue betwixt the parties to the action?    The cases cited to the contrary prove that it can not; and instances of its conclusiveness in regard to strangers, are not to the purpose.    On the common principle of estoppel, it concludes only parties and privies, and can therefore be falsified by any one else—a distinction to which the American courts seem not to have duly attended—but can any man lay his finger on an Eng-

[Freeman v. Caldwell.]

lish case in which a sheriff's return to an execution has not been allowed to have that indisputable verity attributed by Lord Coke to every record without exception? Like every other record, it may be amended to make it conform to the truth; but to expunge it would be to corrupt it, and to abuse that discretionary power which has been given to the courts for a better purpose. The judge who tried the cause before us, rested it on authorities which show that in a plea of former levy, the property is laid to have been in the defendant. Taking the practice to be so, is not the sheriff's return, which is of such high regard as to admit of no averment against it, conclusive evidence that the fact was so? It is this principle of conclusiveness which originally made execution of the body satisfaction of the debt; which still makes a return of levied to the value, a discharge of the judgment; and which lies at the root of every such matter. It is because the record of a judicial act can not be unravelled to let in subsequent matter, that this is so at the common law; and it is for the same reason, that before the *32* Hen. VIII, there was no re-extent upon an eviction of a tenant by *elegit.* "*Nota,*" says Lord Coke, 1 *Inst.* 190, *a,* "it appears by the preamble of the said act, and by divers books, that after a full and perfect execution had by *elegit* returned and of record, there never shall be any re-extent on any eviction, but if the extent be insufficient at law, there may go out a new extent." Here then is distinctly announced the common law principle which rules the case: and though it has been abrogated in England, so far as regards land, there is no statute on the subject in Pennsylvania. The silence of the repealing act as to chattels, was imputed by Mr Justice Woodbury, in Whiting *v.* Bradley, to a supposition that creditors could, even then, have a new execution of every thing but land; but it is plain, from the special provision of the statute in that case, that the legislature of his own state thought otherwise. Indeed, the statute *Westm.* 2, which gave the writ of *elegit,* had put land and chattels on a footing in all respects, except the relative quantity which might be levied of each, and the manner of its application to purposes of satisfaction; and it is probable, the reason why the latter were not included in the *32* Hen. VIII, was that the progress of trade had not involved the title to things personal, so frequently in complication and doubt, as to cause much inconvenience from it. Under the statute, *Westm.* 2, therefore, a difference of construction in regard to the point before us, could not have arisen from the circumstance suggested, that an extent must always be returned to found the title of the tenant; for though an inquisition need be returned under that statute only in the case of land, yet when it is actually returned, as it must be when requested, it is equally parcel of the record. As we determined, in Gratz *v.* The Lancaster Bank, 17 *Serg. & Rawle* 278, the distribution of money brought into court, is a judicial act, and the foundation of it is consequently matter of record.

Without power derived from a statute, therefore, I take it that

[Freeman v. Caldwell.]

execution can not be repeated; and though this clear common law principle may be violated, it can not be evaded. It is among the worst symptoms of the judicial epidemic of our day, that the bent of the professional mind is towards oral testimony in preference to record and written proofs. What motive could there be, were it allowable on principle, to overturn the record in this instance? The plaintiff's case may be thought a hard one; but it is not more so than would be the case of a stranger, and to say that every sheriff's vendee who is deprived of the property by title paramount, shall have his money again, would destroy all confidence in the stability of judicial sales. He takes upon him a risk which may lead to his disadvantage; but he does so at the premium of a reduced price. Were it not for this risk, a plaintiff might safely depreciate the defendant's title, and buy it in at a sacrifice. If it proved good, he would have it at an undervalue; but if bad, he would be only where he began. His interest, instead of being promoted by a sale for an outside price, would be to have the property sacrificed; and it is impolitic to encourage a principle which would make him a speculator. In this respect, an advantage over the other creditors would be, not only unjust as to them, but ruinous to the debtor. On grounds of reason and authority, therefore, he ought to stand as any other purchaser.

Judgment reversed.