## ANGIER *v.* ASH & *a.*

The return of a sheriff who has attached hay, grain, &c., that he left a copy of the writ and of his return with the town clerk, is evidence in his favor of that fact, even in an action of trespass *de bonis asportatis,* brought by him against a stranger to the suit in which the attachment was made.

An attaching officer cannot prove a demand made upon himself for the property attached, by his written acknowledgment of demand made upon the execution. Such acknowledgment is not evidence in his favor.

Personal property covered by a fraudulent mortgage may be attached, without regard to the mortgage; and the mortgage may be impeached without calling for an account of the mortgage debt.

Evidence tending to show the possession of property, or tending to show fraudulent purpose, is admissible, though if standing alone its weight might be slight.

TRESPASS, *de bonis asportatis.* Plea, the general issue. It appeared that the plaintiff was a deputy sheriff, and attached the hay and oats in question on the 2d day of January, 1851, as the property of the defendant, Ash, by virtue of a writ in favor of Isaac Patterson, against Ash; and that he put one Caleb Ash in charge of the property, to keep the same. The property was in a barn, and the plaintiff, in his return on the writ, after setting forth that he had attached the same, proceeded to say, that on the same day he left a copy with the town clerk. The defendant excepted, that the leaving of the copy could not be shown by the officer's return, but must be shown by the town clerk, or by a certified copy from him. The plaintiff contended that it was unnecessary to show that a copy was left, but if it was necessary, the return was sufficient to show it. No other evidence was offered in regard to the matter, and the defendants excepted.

The evidence tended to show that the property was taken by force from Caleb Ash, the keeper, by the defendants.

In the suit *Patterson* v. *Ash,* judgment was obtained and execution issued, and was returned unsatisfied. Upon the

execution was an acknowledgment by the plaintiff of a demand upon him for the property, and a failure to produce it. The defendants objected, that the evidence was incompetent to prove a demand. The court having intimated an opinion that it was not necessary for the plaintiff to show a demand in order to maintain this suit, ruled the evidence competent for the purposes of this trial.

It appeared that the property had been mortgaged by Edward Ash to Cogswell, the other defendant, in July, previous to the attachment. The plaintiff contended, and offered evidence to show, that the mortgage was fraudulent. The defendants took the position, that whether fraudulent or not, the plaintiff could attach the property only in one way; by demanding a disclosure of the mortgagee, according to the statute, and could try the validity of the mortgage only by trying the truth or falsity of the disclosure. But the court ruled otherwise.

Among the evidence introduced to show fraud, was the deposition of one John L. Martin. The plaintiff contended not only that said mortgage was fraudulent, but that part of the property attached was not covered by the mortgage, but belonged to Ash, the defendant, exclusive of the mortgage. And for this purpose he introduced evidence tending to show that the farm on which Ash lived, and had lived for several years, and on which the hay and oats grew, was in reality the farm of Ash, though he had never had a deed of it. In his deposition, Martin testified to a conversation between Ash and himself about the farm five or six years ago, wherein Ash said, among other things, that he meant to pay his debts, but did not calculate to pay much cost. This was excepted to as incompetent, but the court overruled the objection.

To show that Ash had means to pay for the farm, the plaintiff introduced evidence showing that he had logged from two or three lots, but whose they were did not appear,

Angier *v.* Ash.

and had got timber therefrom. This evidence was excepted to, but admitted by the court.

The jury returned a verdict for the plaintiff, and the defendants moved to set the same aside, and for a new trial, for supposed error in the foregoing rulings of the court.

*Rand*, for the defendants.

There is no necessity in any case of doing away with the provision of the statute requiring the officer attaching mortgaged property to demand of the mortgagee a disclosure of the amount due on the mortgage. It could be of no advantage to the attaching creditor. The validity of the mortgage can be tried as well by proceeding exactly according to the statute, as in any way. And there seems to be a right guaranteed to the mortgagee by statute. For it must be presumed to be guarded against fraud in cases of this kind as strictly as was deemed necessary. And the mortgagee having gone through with all the formalities required by statute, has certainly a *prima facie* lien upon the property, which can be removed only by the officer's going through with the formalities likewise required of him. And to this the mortgagee is entitled. This disclosure upon the part of the mortgagee would in many cases lead to an adjustment of the whole matter, even if the creditor did suppose the mortgage fraudulent. The court should therefore favor the proceeding. And we cannot see how a valid attachment can be made in any other way. The requirements of the statute are plain. Property subject to a mortgage may be attached in a certain way, plainly implying that it cannot be in any other. Rev. Stat. ch. 184, §§ 15, 16.

We apprehend the intention of the statute was to place the mortgagee in a similar position to an officer who has attached property. No second officer can attach it. It can be reached only in a certain way. But suppose the second officer says the claim upon which the first suit is founded is fraudulent. This would make no difference. Two offi-

cers cannot hold valid attachments of the same property at the same time. *Prima facie*, the first claim is good. The writ is issued with due formality, and the attachment is good, and no subsequent proving of the first claim to be bad will make the second officer's attachment good. For it never was an attachment, in fact. So here. *Prima facie*, the mortgage is good. It is executed with due formality. It creates a lien, *prima facie* good, upon the property, operating like an attachment. This is a bar to any attachment unless it is according to the statute. For if it were not for a certain provision in the statute, it could not be attached at all. Still, it may be attached. If this attachment be not made according to the statute, no subsequent proving of the mortgage to be bad will make an attachment good, which never in fact amounted to an attachment. To get the property, the creditor must make a new attachment.

If the court decide that an officer may attach property under a mortgage without notifying the mortgagee and demanding a disclosure, it virtually does away with the provision of the statute. For the officer may treat every mortgage as fraudulent, and in no case give notice and demand a disclosure. And the attachment would be valid whether the mortgage was good or not. This is, giving to the mortgagee and to the attaching officer both, the right of possession of the same property.

The testimony of John L. Martin, and the testimony in regard to Ash's drawing logs, was incompetent and irrelevant.

" The evidence offered must correspond with the allegations, and be confined to the point in issue." . This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, and the reason is that such evidence tends to draw away the minds

of jurors from the fact in issue, and to incite prejudice and mislead them. 1 Greenl. Ev. §§ 51, 52.

*Bingham*, for the plaintiff.

I. The sheriff's return was competent evidence to show the fact of the attachment, as well as the manner of making it, by leaving a copy at the town clerk's office. *Atherton* v. *Gilman*, 9 N. H. Rep. 185; *Brown* v. *Davis*, 9 N. H. Rep. 76; *Parker* v. *Guillow*, 10 N. H. Rep. 103.

II. The execution being returned unsatisfied, the acknowledgment upon it by the officer who served the writ and made the attachment, that a demand had been seasonably made upon him, for the property attached, and that he had failed, was competent evidence, and if not, it was immaterial.

1st. The court intimated that to maintain this action, no such evidence was necessary on the part of the plaintiff, and if so, it was immaterial; and though it was incompetent, its introduction does not vitiate the verdict. *Jewett* v. *Stevens*, 6 N. H. Rep. 80; *Hamblett* v. *Hamblett*, 6 N. H. Rep. 333; *Clement* v. *Brooks*, 13 N. H. Rep. 92.

2d. It would seem that the fact that the demand was made on the attaching officer on the execution, or that the execution was put in his hands, would be unnecessary to be shown affirmatively by the plaintiff. Having shown the attachment by the plaintiff, and the forcible taking by the defendants, that would be all that it would be necessary for him to show, in order to make a *prima facie* case. And if any thing has occurred to release the plaintiff in this suit from his liability to the original creditor, that must be shown by the defendants, in order to avail themselves of such a circumstance in defence; and the plaintiff is not obliged, before any thing is shown, to negative such a defence. *Stanton* v. *Hodges*, 6 Verm. Rep. 54.

3d. If it were shown that no demand was in fact made, there was perhaps no occasion for any demand to be made

upon the officer in this. case in order to make him liable, as the property had been taken, used up, and put beyond the officer's power to obtain, long before judgment was recovered in the original suit, and the law delights in no idle ceremonies. *Cooper* v. *Mowry*, 16 Mass. Rep. 4 ; *Webster* v. *Coffin*, 14 Mass. Rep. 196 ; *Johnson* v. *Edson*, 2 Aik. 302.

4th. The return of the plaintiff as deputy sheriff, acknowledging a demand on the execution, was competent evidence, as the return of a fact in the way of his official duty, and showed the execution in his hands to be levied upon the property attached. *Hapgood* v. *Hill*, 20 Maine Rep. 372 ; *Randall* v. *White*, 13 Maine Rep. 245 ; *Thompkins* v. *Cobb*, 22 Maine Rep. 286 ; *Sias* v. *Badger*, 6 N. H. Rep. 393 ; *Sanford* v. *Nichols*, 14 Conn. Rep. 324.

5th. The *only object of* a demand would be to preserve the lien and continue the liability of the plaintiff to the original creditor, and as a consequence, if it was necessary in this suit that the plaintiff should show on trial his liability to the original plaintiff beyond what would result from the fact of the attachment, then evidence showing that such liability still subsisted, would be the very thing wanted. The acknowledgment by the plaintiff in writing, made as a deputy sheriff upon the execution, must be conclusive upon him, and establish his liability beyond all doubt ; and the production by the plaintiff of the execution, with this acknowledgment or return thereon, must be not only competent, but the best evidence, that such liability exists, which could be produced. This return on the execution was made for the express purpose of continuing the liability of the plaintiff.

III. As to the position, that if the mortgage was fraudulent, the plaintiff could attach the property only in one way, by demanding a disclosure, &c., we say, all conveyances for the purpose of defrauding creditors, are void as against creditors.

IV. The deposition of Martin, and the evidence relative

Angier v. Ash.

to the defendant, Ash, logging on different lots, was competent testimony. *Blake* v. *White*, 10 N. H. Rep. 267.

BELL, J. The officer's return was properly received, and was competent evidence that a copy of the writ was left with the town clerk. Between the parties to a suit, and those claiming as privies, and others, whose rights and liabilities are dependent upon the suit, as bail and indorsers, the return of the sheriff of matters material to be returned, is so far conclusive evidence that it cannot be contradicted, for the purpose of invalidating the sheriff's proceedings, or defeating any right acquired under them. But such return is not conclusive as to third persons, whose interests are not connected with the suit, but may be affected by the proceedings of the sheriff, nor as to collateral facts, or matters not necessary or proper to be returned. In a suit directly against the sheriff for a false return, it may of course be contradicted. *Lewis* v. *Blair*, 1 N. H. Rep. 69; *Howards* v. *Daniels*, 2 N. H. Rep. 140; *Whiting* v. *Bradley*, 2 N. H. Rep. 82; *Parker* v. *Guillow*, 10 N. H. Rep. 103; *Buckminster* v. *Applebee*, 8 N. H. Rep. 546; *Hall* v. *Tenney*, 11 N. H. Rep. 516; *Galusha* v. *Cobleigh*, 13 N. H. Rep. 74.

In the present action, the defendant, Ash, was the defendant in the original suit, but Cogswell is a stranger to it. He claims the property under Ash, but by a title of an earlier date than the attachment, and his interest cannot be affected by any thing done in that action without his concurrence. But we take the rule to be well settled, that the return of an officer of his doings by virtue of any process which it is his duty to execute and to return, duly made, is *prima facie* evidence in any action to which a stranger is a party, and for or against himself, in any action to which the sheriff is a party, subject to be impeached, contradicted, or varied, like other *prima facie* evidence, by any parol testimony or other competent proof. *Brown* v. *Davis*, 9 N. H. Rep. 76; *Lewis* v. *Blair*, 1 N. H. Rep. 68;

*Griffords* v. *Woodgate*, 11 East 299; *Avrill* v. *Sheriff*, 3 N. & M. 871; *Whiting* v. *Bradley*, 2 N. H. Rep. 79; *Howard* v. *Daniels*, 2 N. H. Rep. 137; *Sias* v. *Badger*, 6 N. H. Rep. 393; Watson Sheriff 72; *Cornell* v. *Cook*, 7 Cow. 310; *Kendall* v. *White*, 13 Maine 245; *M'Lellan* v. *Codman*, 22 Maine 310; *Barrett* v. *Copeland*, 18 Vt. 67; *Batt* v. *Burnell*, 11 Mass. 163; *Ten Eyck* v. *Walker*, 4 Wend. 462.

But, to make any matter stated in a sheriff's return evidence, either *prima facie* or conclusive, it is essential that the matter returned should be material and proper to be returned. Any other thing introduced into such return, either from ignorance or with a view to make the officer's statements evidence for himself or others, is entitled to no credit, and is entirely inadmissible. *Davis* v. *Clements*, 2 N. H. Rep. 390; *Hathaway* v. *Goodrich*, 5 Vt. Rep. 65; *Governor* v. *Bell*, 3 Murph. 331; *Williams* v. *Merle*, 11 Wend. 80; *Barney* v. *Weeks*, 4 Vt. Rep. 146; *Arnold* v. *Tourtellot*, 13 Pick. 172.

The return in this case was properly admitted, if the facts stated were material and proper to be returned. Before the passage of the Revised Statutes, the attachment of hay and oats, the articles here in controversy, was governed by the ordinary rules applicable to other chattels. The officer was bound to take the property into his possession, and retain it in his own custody, or that of his servants or bailees. The cumbrous character of these kinds of property rendered it inconvenient to remove them, or to keep them in actual custody, and the provisions of the statutes, under which this return was made, were doubtless enacted to remove in some degree the difficulty to which officers were subjected in making and preserving such attachments. Section 14 of chap. 184 of the statutes provides "that the officer attaching grain unthreshed, hay, &c., may leave an attested copy of the writ and of his return of such attachment thereon, as in the attachment of real

estate; and in such case the attachment shall not be dissolved or defeated by any neglect of the officer to retain actual possession of the property." Though an attachment of such property may still be made, and the property kept as before, yet the means of preserving the lien of the attachment by this new mode of service was important, both to the creditor and to the officer. Being material and proper to be done in the due and legal service of the process, it was proper to be returned, and consequently the return becomes evidence of these facts stated in it. It was " a return made by the officer in the regular discharge of his official duty." 13 Maine Rep. 245.

The acknowledgment by the plaintiff of a demand upon him for this property, though written upon the execution, was not evidence in his favor. A return by him upon the execution, that it was placed in his hands within thirty days after judgment, with orders to levy it upon the property attached, and that he could not levy the same, because the articles had been wrongfully taken from his possession, might be evidence to show that the attachment had not been lost by neglect. *Kendall* v. *White*, 13 Maine Rep. 245.

But this indorsement does not purport to be such a return. It is not official. It is not made in the discharge of any official duty, nor under the sanction of any official oath. It binds the plaintiff as an admission, but it binds no one else. But this evidence was entirely immaterial. It was not necessary to prove any such demand. The property, so far as this point was concerned, was rightfully in the actual possession of the plaintiff's agent and keeper, and the taking from his possession was a wrong, for which he was entitled to maintain the action.

The attachment being duly proved, the burden was on the defendant to show that it had been lost or dissolved, whether his object was to disprove the plaintiff's title, or to

reduce his claim for damages; but nothing of that kind appears to have been attempted.

The ruling of the court, that the plaintiff might assail the validity of the mortgage upon the ground of fraud, without reference to the account or disclosure which officers have a right to require, was correct beyond question. The counsel, in urging this exception, seems not to have considered the three points to be regarded in the construction of remedial statutes, to wit, the old law, the mischief, and the remedy.   3 Co. Rep. 7.

The common law made ample provision for setting aside all deeds and mortgages which were shown to be fraudulent.   They were disregarded as merely void, absolute nullities, as to the parties entitled to take advantage of the fraud.   To this point authorities are hardly needed.   See Pow. Mor. 23; *Haven* v. *Low,* 2 N. H. Rep. 13; *Smith* v. *Lowell,* 6 N. H. Rep. 67; *Smith* v. *Smith,* 11 N. H. Rep. 459; *Shurtleff* v. *Willard,* 19 Pick. 202; *Robbins* v. *Parker,* 3 Met. 117.

At common law, the right to redeem personal property subject to mortgage, was incapable of being taken in execution, and of course, under our law, incapable of being attached. *Haven* v. *Law,* 2 N. H. Rep. 13. The officer could take, by an attachment, the right of the mortgagor, and nothing more. The mortgagor had no right to take or to hold the goods mortgaged, from the possession of the mortgagee. The officer, being thus unable to take possession of the property, could not attach it, however small might be the amount of the mortgage debt, as compared with the value of the property. This was the mischief designed to be remedied. The same difficulty long existed in relation to the equity of redemption of real estate, but had been remedied by special statute many years ago. And the remedy proposed by the statute of 1832, of which the 15th and 16th sections of the 184th chapter of the Revised Statutes is a reënactment, was, that the officer or creditor

may require a statement under oath of the mortgage debt, and may attach the property by paying or tendering the debt, and if the mortgagee refuse to make such statement, or make a false statement, his mortgage becomes of no force as against the attachment. Now it is obvious that this new provision has and can have no effect upon fraudulent mortgages, because they are regarded, as to creditors and others entitled to take advantage of the fraud, as mere nullities. In such a case the object of the attachment is not to ascertain the amount of the mortgage debt, and to pay or tender its amount, in order to make an attachment of the debtor's right, but to avoid and set aside the mortgage, and thus to hold the entire property exempt from the illegal incumbrance. There is nothing in the statute which makes any change in the rights of the parties at common law in this respect. It may sometimes be for the interest of an attaching creditor to call for an account of the mortgage debt, to aid him in showing its fraudulent character, but it is optional to do so or not, as he thinks it advisable.

The testimony of Martin seems to us to be admissible; though standing alone, its weight must be inconsiderable. The question was of a fraud in concealing his ownership of a farm. The conversation related to that farm. The language excepted to, imports a fraudulent purpose—it naturally carries that meaning—and, unless it was used in a way and in a connexion inconsistent with that idea, it would ordinarily be so understood by a jury. Acts or declarations evincing a fraudulent intention or purpose, if connected in point of time, are admissible, as throwing light upon the general object of the party, though they may not relate to the property or transaction in question in the case. *Whittier* v. *Varney*, 10 N. H. Rep. 291; *Bradley* v. *Obear*, 10 N. H. Rep. 477; much more then should a conversation importing, unless explained, a fraudulent purpose as to the very property and transaction under examination. How

much weight it should have, is of course for the jury to judge.

The same view applies to the evidence relating to the business of the defendant, Ash. It had a tendency to show that he had some means, though very slight. The business of logging might be profitable, if the lumber was hauled on wages or on shares; perhaps not less so, if the timber was appropriated without payment. Evidence that a man was engaged in very extensive business, or was in the receipt of a large income or salary, would hardly be objected to, though its direct tendency is rather to show the opportunity of acquiring property, than the actual possession of it. The evidence here is manifestly of the same character.

*Judgment on the verdict.*