Ranney, J.
Our opinion is confined to a single question. Upon the other questions arising in the case, further testimony is required; and it is agreed by the parties that the cause shall be remanded to the district court to enable them to take it.
Shall the amount for which the land was sold to Taggart, upon the judgment rendered by the circuit court, be allowed as a pro .tanto satisfaction of the mortgage? The facts bearing upon this question are indisputable. The judgment was recovered upon two of the notes secured by the mortgage. The mortgage was given ^to secure the purchase money, and covered the lands levied ■upon and sold. Before the judgment was recovered against John Dillon, the mortgagor, he had sold and conveyed the land, subject to the moi’tgage, to Moses Dillon and George B. Reeve. It is perfectly evident that the land was levied upon, bid off, and a deed taken by Taggart, in ignorance of the conveyance; and most .abundantly clear that he got no title to the land by the sale, and •obtained no real satisfaction of any part of his debt.
But it is insisted by the defendants’ counsel that it is alto.gether immaterial whether he did or not; that his notes were merged in the judgment, and the judgment in part satisfied by the sale; and that he can not now be heard to insist upon a vacation of that satisfaction, because the sale by the marshal excluded all warranty — the purchaser taking all risks, and subject to the full opera *205 tion of the maxim, caveat emptor. The cases chiefly relied upon to support this position are Vattier v. Lytle’s Ex’rs, 6 Ohio, 477, and Freeman v. Caldwell, 10 Watts, 9. These cases certainly go to the .full length of holding that a court of law will not vacate the satisfaction of a judgment, and order a new execution, because it turns out that the property which produced the satisfaction did not belong to the judgment debtor. Nor do they contain any intimation that a court of chancery possesses more enlarged powers, or could, in such cases, afford any relief. This doctrine is far from being universally acquiesced in. The eases cited in argument very conclusively show that relief is given in several of the states of the Union; but there is very little agreement as to the mode of obtaining it, or the principles upon which it is afforded; while several of the cases referred to, seem to rest upon statutory provisions. The subject has been most fully considered by the New York court of chancery, in the cases of Wambaugh v. Gates, 11 Paige, 505, and Bank of Utica v. Mercereau, 3 Barb. Ch. 586. In these cases, while the opinion of the chancellor evidently was that the relief might be given upon general equity principles, still, much reliance is *placed upon the analogy furnished by the statute, 22 Henry YIII, chap. 5, giving a new extent when the creditor was evicted, by title paramount, from the lands included in the first, and which had been adopted into the colonial legislation of that state.
It is clear, that neither class of cases can be made to depend upon any mere technical rule. The difference manifestly results from the greater or less weight given to considerations of public policy. Abstractly, there can be very little justice in permitting the debtor to pay his debt with the property of another, or in compelling the creditor to discharge it, before he has received an actual satisfaction. Where the debtor has lost nothing, and the creditor has received nothing, it seems most inequitable to permit a mere mistake to discharge the debt. But the fact, that exact justice can not be done in every case, is in no way decisive against the soundness of a general principle. If it is productive of general Convenience and simplicity, and in most cases adapts itself to the business and intercourse of men in society, it needs very little experience to see, that it is, upon the whole, salutary, and ought not to be impaired by ingrafting numerous exceptions upon it. The difficulty, in many cases, of determining what is abstractly right, and what remedy ought to be afforded, *206 undoubtedly lies at tbe foundation of tbe refusal to interfere in any way, where the sale has been fairly made.
When the sale is made to a stranger, and the money has been paid over to the creditor, it is clear that the officer, who has done-no more than his duty, ought not to be required to refund; and by no means certain, that the creditor, who has got no more than he-was entitled to, and was under no obligation to investigate the debtor’s title to the property, may not conscientiously retain the-money of the purchaser — who must be presumed to have investigated, and to have been fully aware that he bought at his own risk. It is perfectly certain, that no contract to warrant the title can be-inferred, on the part of the debtor. As against him, the whole proceeding is im inviturrt; while attaining the same end, in *substance, by a new execution on the judgment for the benefit of the purchaser, involves the danger of collision between the purchaser1 and adverse claimant, and deprives the debtor of all ability to defend his title to the property. It would never do to place the creditor, when he became the purchaser, in a better position than a stranger;, as it would enable him to purchase without risk, and would furnish a strong inducement to him to throw doubts over the title, resulting, inevitably, in a sacrifice of the property, to the prejudice of the-debtor.
If these considerations can not be deemed conclusive of the correctness of the rule adopted in the Pennsylvania and Ohio cases,, they must be considered as going far to sustain them; and they derive a strong support from the analogy furnished in private sales, of real estate without warranty.
I have alluded to these considerations, with no view of approving- or disapproving of the decision made in Vattier v. Lytle; but for the mere purpose of showing that the case now before us is neither within the terms or policy of that decision.
In cases like that, whether the appeal is made to a court of chancery, or to the equitable powers of the court that rendered the judgment, by a summary application, the party must stand upon the mistake he was under when he made the purchase; and the relief he demands, is a new execution to levy upon the property. The mistake furnishes the only ground of equitable interference, and the-future use of the judgment the only object to be attained. Now, let. it be granted, that considerations of public policy intervene to prevent the correction of such mistakes, and still this case is not. *207, 208 .affected. The present complainant has all the rights of Taggart, the original mortgagee; and ho comes into court with the mortgage, and demands an appropriation of the property pledged for the payment of the debt. That the debt existed, and was secured by the mortgage, is admitted; and the only question is, has it been paid, in whole or in part? The defendants, who have purchased the property for a nominal ^consideration, subject to this very mortgage, say that it has; but how ? They answer, by an abortive .attempt to appropriate the property to the payment of the judgment. That this proceeding did not appropriate it, is certain; and ■ equally so, that the defendants were in no way prejudiced by it. At the time it was pursued, Taggart was the undisputed owner of the legal title in fee, of this property.
The debt was due and unpaid, and nothing but the equity of redemption remained with the defendants. He had two undoubted .remedies, which he might have pursued conveniently; but he could have but one satisfaction. He could have brought an action at law for the debt, and levied his execution upon any property then belonging to John Dillon; or he could have filed a bill in chancery for the foreclosure or sale of the equity of redemption, whoever .might have been the owner of it. He pursued the first, and levied upon his interest, supposing John Dillon to have been still the -owner, when in fact he was not, and obtained nothing by the sale.
His assignee is now pursuing the other. To deny him relief, we must not only say that Taggart, by his mistake, lost all further .•remedy upon his judgment at law, but, also, that he forfeited his legal estate in the property, as well as the debt secured by it, and .all right to pursue this independent remedy. But the complainant .asks for no further remedy upon the judgment, and claims no right under it. If he did, aside from the main question, a very conclusive answer would be, that we have no power over the records •or process of the circuit court.
He asks us to correct no mistakes; but having an undoubted •■standing in this court, under an acknowledged head of equity juris■diction, he simply asks us to say, whether what has been done in the circuit court amounts to such a payment and satisfaction of the mortgage as to bar this remedy upon it. We have no hesitation in raying that it does not.
When the jurisdiction of a court of equity is established, and *its duty to hear and determine is unquestioned, it looks only *209 to the substance of transactions, and is never embarrassed by the forms or complications in which they may be involved. After forfeiture, all the rights that Dillon or his grantees had were in equity;, and the only way in which they could redeem the land, or take the-legal title from Taggart, was by paying the debt — not in form only,, but in reality. To call the mistaken proceeding in the circuit court, by which nothing was accomplished and nothing obtained, in reality a payment of the debt, is in the face of common sense; and to permit it to operate as such, not for the benefit of the debtor even, but for those who have purchased his interest subject to the payment of the debt, and without paying, would hold the property without, consideration, and shock the moral sense. If they were here with a bill to redeem upon no more equitable grounds, no one would-suppose them entitled to any relief. And still, the case is not substantially different. The complainant is here with the mortgage- and evidences of indebtedness, apparently unsatisfied, and asking a sale of the equity of redemption. The burden of showing a satisfaction is upon the defendants, and is in no way changed from the fact, that the bill anticipates such a defense and seeks to avoid it. They stand upon the mere creature of a court of equity, and before they can ask its protection, they must do equity. They can not expect equity to suffer to be done in its name what it would not itself do, nor suffer them to obtain indirectly what it would not do for them-, directly. The case of Vattier v. Lytle was decided upon the-authority of the early cases in Pennsylvania. Yery recent decisions-of the Supreme Court of that state, make it unmistakably clear that no such injustice as extending the principles of that case to one like-the present, would be there permitted. In a case reported in 14 State R. 883, it is said that the mistake of the mortgagee in bidding-for the land, under a misapprehension of his right to apply the proceeds to the payment of the mortgage debt, would furnish a sufficient-reason for setting aside *the sale. And in Cummings’ appeal, decided in 1854, the same ruling was made, in a case in every way more doubtful than the one before us. The purchaser had two-claims, both due for the purchase money of the property, and both were in judgment, the largest of which was secured by mortgage, aDd the other not. He levied an execution, issued upon the smaller-judgment, upon the property, and bid it off, under the erroneous-belief that the sale would divest all liens and entitle him to apply the surplus to the payment of the mortgage debt. The court de *210 cidod, that if the sale was permitted to stand the surplus would belong to the mortgagors; but they held it to be the duty of the court below, either before or after confirmation, to give the purchaser relief, by setting the sale aside and discharging him from his bid. In these cases, it will be observed the mistake was one of law purely, and the relief given opened the judgment for a new execution.
Upon the whole, without expressing any opinion as to the power ■of a court of equity to vacate the satisfaction of a judgment, on account of the mistake of a purchaser, and the want of title in the debtor to the property sold, .we are clear that such a sale of mortgaged property to the mortgagee can not operate to deprive him of rights existing anterior to, and independent of, the judgment. That if such a mistake does not, on the one hand, lay a foundation for equitable relief, it does not, on the other, give any advantage to the debtor, when set up as a defense in a suit brought upon the mortgage, over which a court of equity has unquestioned jurisdiction.
We.are therefore of opinion that the amount for which the property was sold, upon the execution issued from the circuit court, should not be allowed to diminish the amount to be recovered in this suit.
Decree accordingly.