## The State *v.* Rye.

An order of re-commitment or transfer may properly be made in vacation, when the parties do not insist upon a final disposition of the questions raised during the term.

Where a road-petition described one terminus of the route as "northerly" of a certain monument, and the report of the commissioners described the corresponding terminus of the road laid out as "north-easterly" of the same monument, *held*, no variance.

It is no objection to the validity of a judgment establishing a highway, that the time, fixed by the commissioners for the construction of the road laid out, had expired before the acceptance of their report.

The proceedings of the Court of Common Pleas, establishing a highway, cannot be called in question collaterally for any want of regularity therein, but are valid until reversed or set aside upon *certiorari*. If want of jurisdiction be apparent on the face of the proceedings, it may be taken advantage of at any stage; if not thus apparent, the objection must be taken before reference of the petition, or it will be regarded as waived.

The allegations of a road petition, essential to the jurisdiction of the commissioners, are to be taken as true, if not controverted at the proper stage of the proceedings, which is before reference of the petition.

The Court of Common Pleas having full and complete jurisdiction on the subject of highways, if the record shows upon its face a proper exercise of their authority, evidence *aliunde* will not be received to oust them of their jurisdiction in respect to any judgment establishing a highway.

Selectmen have no authority to lay out a highway without a petition for that purpose, and if they proceed to lay out under instructions from the town, their proceedings are invalid.

If the public have no means of access and no occasion by and upon which they can use a new highway, it is no nuisance for the town in which it is located not to build and keep it in repair.

A verdict will not be set aside upon a point not raised on the trial, although it may properly arise upon the evidence reported.

This was an INFORMATION, filed by the Attorney General against the town of Rye, for not building a new highway in that town, alleged to have been established by the Court of Common Pleas for this county, at the September term, 1853, on the report of the board of road commissioners.

On the trial it appeared in evidence that a petition was filed in the clerk's office, by J. P. Drake and als., prior to the September term, 1852, of that court, for a new highway in said

town, described in the petition as beginning· at the north-east corner of Joshua Pickering's pasture, and thence running south-westerly to a stake and stones, about seventy feet northerly of the corner bound between the towns of Rye and North-Hampton; said bound being in the pasture of Joshua Pickering aforesaid. The petition is dated August 2, 1852, returnable at said September term, 1852, and an order of notice issued thereon, returnable at said September term, 1852, at which time the petition was referred to the road commissioners, the order of notice having been duly served on said town on the 17th of August. In said petition it was alleged that application in writing had been made to the selectmen of Rye to lay out said highway, and that they had neglected so to do; and it appeared in evidence that such petition was presented to the selectmen on or before the 19th day of March, 1851.

At the February term, 1853, of said court, the road commissioners made report of a hearing, upon due notice, on the 22d of November, 1852, and laying out a new highway, described as beginning " at a stake in the highway at the north-east corner of the pasture of John Pickering, he being the heir of Joshua Pickering; thence " through land of John Pickering, by specified courses and distances, " to a stake in the new highway heretofore laid out by the town of North-Hampton, and on the line between the towns of Rye and North-Hampton;" and reported that in their opinion the highway should be completed for public travel on or before the 1st day of July, 1853. No estimate of the expense of building the highway was certified in the report. Exceptions were taken to the report at the said February term, on the ground that the highway laid out did not, by any thing which appeared in the report, terminate at or near the bound described in the petition, and that the report contained no estimate of the expense of building the highway. The exceptions were not considered and decided upon during said term, but the presiding judge, holding them under consideration until after the adjournment of court, at the close of the term, during the succeeding vacation, gave directions to the clerk to recommit the

report to the road commissioners for amendment, and on the 20th of July, 1853, the clerk entered upon the docket an order, as follows:

> "*Court of Common Pleas, Clerk's Office,*
> July 20th, 1853.

"It is ordered by the court that the report be recommitted to the board of road commissioners, to be amended by them.

Attest: A. H. Hoyt, *Clerk.*"

At the September term, 1853, of said court, the road commissioners made a further report, that having examined the report before made and recommitted to them, and having reconsidered the facts laid before them at the hearing on the petitions, they now amend their report by describing the highway laid out as follows:

"Beginning at a stake in the highway at the north-easterly corner of the pasture formerly belonging to Joshua Pickering, deceased, and now belonging to John Pickering, and from thence running North, 83 ° 20″ West, 7 rods, through said pasture land to a stake and stones; thence South 89 ° West, 33 rods, through said pasture land to a stake and stones in the pasture aforesaid, and 70 feet north-easterly of the corner bound between the towns of Rye and North-Hampton, and in the new highway heretofore laid out by the selectmen of North-Hampton;" and certifying their estimate of the expense of constructing the said highway thus laid out at $150.

The said commissioners, in said last report, then set forth as follows: "We amend our said report by substituting the above description, and estimate for all that part of our original report upon the second page thereof, beginning with the words 'beginning at a stake;' all the rest of our said report we design shall stand as originally made;" the description of the highway as laid out contained in the original report being on said second page, and the time limited for building said highway not being on said page. Said report was accepted at the September term, 1853.

From the records of the town of North-Hampton, it appeared

in evidence that in the warrant calling the annual meeting in March, 1847, was inserted the following article: " To see if the town will instruct the selectmen to lay out a highway beginning near the north-easterly corner of Joshua Pickering's field, and extending to Rye line, agreeably to a petition;" and that the town voted at that meeting to instruct the selectmen to lay out said highway, and no further evidence was offered of a petition to the selectmen to lay out said highway.

The following copy from the records of North-Hampton was introduced in evidence:

" The subscribers, selectmen of North-Hampton, in accordance with a vote passed by said town, have laid out the highway described as follows:   Beginning at a stake " — (and then by specified courses and distances through land of Joshua Pickering to a stake and stones at Rye line,) dated 7th of November, 1851.

(Signed,)    SIMON BROWN, JR., }  *Selectmen of*
JOHN F. FRENCH,  }  *North-Hampton.*

It was admitted that said Brown and French were selectmen of said town for the year 1851, and that said highway as described met the new highway in Rye at the town line.   It was proved that the highway described in the copy, from the records of North-Hampton, was built by turnpiking up the ground soon after it was laid out, though no fences have ever been built upon the side lines; and sometimes there have been bars across the new highway at the point where it enters the old road in North-Hampton, (which old road is at the north-east corner of the Pickering field, the place of beginning;) and at other times there has been no fence or bars across it.   It also appeared in evidence, on the part of the defendant, that the highway laid out in North-Hampton was laid out with a view to connect with the proposed highway in Rye, and that the object and purpose in laying out the new highway in Rye was to make a continuous route from the point of beginning of that highway, at the stake in the old highway at the north-easterly corner of the Pickering pasture, through said pasture to the town line, and across the same through said Pickering's field, in North-Hampton, to the

old road at the place of beginning of the new highway in North-Hampton, and that there was no occasion for using either of said new highways, except in connection with the other, and as forming one continuous highway. To the competency of this evidence, introduced by the defendants, the counsel for the State objected, but the court overruled the objection. There was no controversy as to the facts which thus appeared in evidence. The counsel for the defendants objected that the Court of Common Pleas had no jurisdiction in the case of laying out said new highway, and that if said court had jurisdiction, the highway was not legally laid out. The court directed a verdict against the town, subject to the opinion of the whole court.

*Hatch,* for the defendants.

I. The first question is, whether the alleged highway was legally laid out.

1. The petition was recommitted to the road commissioners out of term time. The case was not continued, nor was the order made as of term time.

2. The report does not agree with the petition. The petition asks for a road to a stake and stones, seventy feet *northerly* of a certain bound. The road was laid out to a stake and stones seventy feet *north-easterly* of the same bound.

3. The report of the road commissioners and the judgment thereon is repugnant to itself. At the September term, 1853, it was reported and adjudged that Rye should build a certain road on or before July 1, 1853.

4. But the Court of Common Pleas had no jurisdiction to lay out this road. The petition was originally addressed to the selectmen of Rye, and prayed for a highway to the town line, which was in fact part of a highway extending from Rye into the town of North-Hampton; the whole of which, if any, was required for the public accommodation. And in fact the selectmen of North-Hampton *afterwards* informally laid out the continuation of this road. The selectmen of Rye had no jurisdiction to lay out the road proposed, and the Court of Common Pleas

had no jurisdiction of the petition, founded on their refusal. The whole proceedings were *coram non judice; Griffin's Petition,* 7 Foster 343; and the facts affecting the jurisdiction of the court are still open to inquiry. *State* v. *Canterbury,* 8 Foster 226.

II. If the highway alleged were legally laid out, the neglect to repair it was no nuisance, and the jury should have been instructed to acquit the town on that ground. At least, the question should have been submitted to the jury.

1. It terminates in the midst of a pasture, in which its whole extent is contained, and is useless unless connected with another new road in North-Hampton. But that road has never been legally laid out. *Griffin's Petition,* 7 Foster 343; Comp. Stat., ch. 52. Nor had it been actually opened or used. Case, p. 3; *State* v. *Canterbury,* 8 Foster 195, 226.

2. It does not enter the old highway at the eastern end even. It begins *at the north-easterly corner* of J. Pickering's pasture, and runs westerly by a line which the commissioners define as the centre of a highway, three rods wide. Only half this width could open upon the old road.

*Bell,* Solicitor, and *Emery,* for the State.

There is nothing in any of the exceptions or points taken by the counsel for the defendant.

I. There is no variance between the description in the petition and the laying out. The petition stated the *termini;* the line between need not necessarily be a straight line. Rules of Court, 81; *Wiggin & al.* v. *Exeter,* 13 N. H. 304; *Stevens* v. *Goffstown,* 1 Foster 456, 457.

II. The course pursued by Judge Morrison is a common one.

. 1. When a judge takes papers home for examination, and so states, and that he will send to the clerk the result of his investigations, with a proper order, it must be considered as being done by consent, and the judgment, if any, being made of the term preceding.

2. The date on the clerk's order of commitment indicates only the time of his making out the order.

3. This was, however, merely an order for commitment for amendment, which may be done by a judge in vacation.

III. As the report was committed only for amendment in form, no notice to the parties is necessary.

IV. The time for building was future when the report was originally made. The report was only amended; consequently it is the same report. It is like a case of continuance for consideration, which would bring the time of building prior to judgment.

The same answer may be made to all these objections or points, and that is that they are made too late.

The record of the Court of Common Pleas is conclusive, and cannot be impeached, unless the objection goes to the jurisdiction. *State* v. *Boscawen*, 8 Foster 195 ; *State* v. *Richmond*, 6 Foster 232.

The power of the court in these cases is judicial, and the proceedings conclusive, unless quashed on *certiorari*. *Robbins* v. *Bridgewater*, 6 N. H. 524.

It cannot be objected that the record does not show that all the land-owners were notified. *State* v. *Raymond*, 7 Foster 388.

Upon an indictment against a town for not making a highway, it is too late to except to the report of the committee that the road laid out varies from the route prayed for. *State* v. *Gilmanton*, 14 N. H. 467.

There are several other cases where similar objections have been held too late. *Foss* v. *Strafford*, 5 Foster 78 ; *Petition of Gilford*, 5 Foster 124 ; *Goodwin* v. *Milton*, 5 Foster 458.

V. The objection to the jurisdiction seems at first blush to have more weight in it, but upon examination it will turn out to have as little foundation as the other.

If the petition is for a road wholly in one town, and does not state that the same has been presented to the selectmen, the court have no jurisdiction, and there is nothing to amend by. *Dinsmore & al.* v. *Auburn*, 6 Foster 356.

If the petition state that the road is part of a continuous route, extending into two towns, then a petition to the selectmen

of each town for that part of the route in each town, is irregular, and the court has no jurisdiction of a petition, coming up upon the refusal of the selectmen of one of the towns to lay out the part in their town. *Griffin's Petition*, 7 Foster 343. Because, on the face of the petition in both of the above cases, the court have no jurisdiction, and their proceedings are all irregular and of no force.

But it is altogether otherwise where the objection to the jurisdiction does not appear upon the face of the proceedings. *Stevens & al.* v. *Goffstown*, 1 Foster 454 ; *Toppan's Petition*, 4 Foster 50 ; *Kennett's Petition*, 4 Foster 141.

See particularly the opinion of the court in these cases.

FOWLER, J. Two general objections to the validity of the proceedings of the Common Pleas in laying out the highway in question, appear from the case to have been taken and insisted upon at the trial. One, that the court had no jurisdiction to lay out the highway ; and the other, that if they had jurisdiction, it was not properly exercised, and the highway was not, for that reason, legally laid out. In the argument, the grounds of these objections are specified, and we have considered them in the order in which they are therein set forth.

The first rests on the alleged informality of the recommitment of the report for amendment, at the February term, 1853. It would seem that the presiding justice, not having time probably to consider and determine the questions arising upon the report of the commissioners, during the session of the court, with the assent, or without any objection from the parties, took the papers home with him, and subsequently returned them to the clerk, with an order of recommitment. We discover no legal objection to this method of procedure. It is sometimes impossible for the court deliberately to examine and arrive at satisfactory conclusions, upon all the numerous points raised in the various cases pending, during the continuance of a term ; and if, without objection from any party, he take home with him the necessary papers, and afterwards return them to the clerk, with orders for

recommitment or transfer, as circumstances may require, we are aware of no valid objection to the practice.

In the case before us, no judgment having been rendered during the term, if there were no order or agreement to the contrary, the petition stood continued as a matter of course, and the order of recommitment must be regarded as having been subsequently made, as of the term, by the mutual consent of all parties. The date of the clerk's order of recommitment is erroneous, but immaterial. It must be treated as made at the February term, and regularly should have been entitled as of that term; but there is nothing fatal in the clerk's error in affixing to it the date, when it was actually entered upon the docket by him. Had it been shown that either party insisted that the questions raised upon the report should be decided during the term, or that the further consideration of them should be postponed to the next term, a different state of facts would have been presented, deserving, perhaps, of serious consideration.

The second objection relates to an alleged variance between the description of the road prayed for in the petition, and the road as laid out in the report of the commissioners; one terminus of the road asked being a stake and stones seventy feet *northerly* of a certain monument, and the corresponding terminus of the road laid out, a stake and stones seventy feet north-easterly of the same bound. We think there is no good foundation for this objection. In the ordinary acceptation of words, a point north-easterly of a given monument, is northerly of the same monument; and the distance named being the same in both cases, a strong presumption arises not only that the same point was intended to be, but actually was described.

The next objection is founded on the supposed repugnancy of the report to itself, it not having been accepted until September term, 1853, while the town is required by it to complete the construction of the road laid by July 1, 1853. It is a sufficient answer to this objection, that it is not essential to the validity of a report laying out a highway, that the commissioners should fix the time for its construction. If no time be specified in the

The State *v.* Rye.

report or the judgment of the court, it is ordinarily the duty of the town to construct immediately, or as soon as practicable, and they are liable .to indictment if it be not completed and opened to public travel within a reasonable period.   The portion of the report fixing the time for the completion of the road, after that period had elapsed, became entirely unimportant, and might and should properly have been stricken out.   It had no effect whatever upon the judgment rendered, and it was entirely immaterial whether it were erased or not.   Its remaining in no way injuriously affected the proceedings, except to encumber the record with superfluous matter.

But all these objections to the regularity and legality of the action of the court — to the proper exercise of its jurisdiction, if it had any in this case — even had they contained any thing that, if seasonably urged, might have been fatal, came too late on the trial of this information.   The Court of Common Pleas having by the statute express and plenary authority to lay out highways, its judgment, establishing any particular highway, cannot be called in question collaterally, for any want of regularity in the proceedings, but remains good until reversed or set aside upon *certiorari*.   *State* v. *Boscawen*, 8 Foster 195 ; *State* v. *Richmond*, 6 Foster 232 ; *Robbins* v. *Bridgewater*, 6 N. H. 524, and other authorities cited by the counsel for the State.

The fourth objection goes to the jurisdiction of the Common Pleas, and, if well founded and seasonably taken, must prevail. It is, that the road asked for in the petition and laid out by the commissioners, was only necessary as part of a continuous route in Rye and North-Hampton, and for that reason the selectmen of Rye had no authority to lay it out, when petitioned for that purpose ; and consequently there could be no appeal from their refusal to lay the same.   There can be no doubt, on the doctrine of *Griffin's Petition*, 7 Foster 343, that this objection must have been fatal, if seasonably urged and sustained.   The contemplated road extending into two towns, the jurisdiction of the Court of Common Pleas and road commissioners in regard to it, was original and exclusive, and the selectmen of the several

towns had no preliminary or concurrent jurisdiction as to the parts of the entire route in their respective towns.

But this objection, too, is waived, if not seasonably taken, unless apparent from the record itself. The Court of Common Pleas having complete and final jurisdiction of the subject matter of highways, with full power to establish a highway entirely within the limits of a single town, where the selectmen, upon petition therefor, have neglected or refused to lay it; if a petition to that court allege that the selectmen have been petitioned to lay out a road entirely within the limits of the town, and have neglected or refused to do it, and it does not appear from the petition itself, and is not shown by evidence, before a reference thereof to the commissioners, that the road is a portion of a continuous route in two or more towns, no portion of which is necessary unless the whole is laid, the court will not afterwards, even before judgment accepting the report and establishing the highway, receive evidence *aliunde* to show want of jurisdiction. *White et als.* v. *Landaff*, 35 N. H. 128.

Much more cannot such evidence be received to impeach a judgment collaterally, after it has been rendered by a tribunal appearing by the records to have possessed full jurisdiction of the subject matter. If want of jurisdiction be apparent on the face of the proceedings, it may be taken advantage of at any stage thereof. *Dinsmoor's Petition*, 6 Foster 356; *Griffin's Petition*, 7 Foster 343; *State* v. *Canterbury*, 8 Foster 226. But if not thus apparent the objection must be taken before reference of the petition, or it will be regarded as waived. The allegations of the petition, conferring jurisdiction, are to be taken as true, if not denied and confuted at the proper stage of the proceedings, and that is, before reference of the petition. Notice is given to the town and its selectmen; the objection, if it exist, is one peculiarly within the knowledge of the town and its agents; and if they choose to lie by and take the chances of a report in their favor before availing themselves of it, there can be no injustice in denying them the right to urge it afterwards. On well established principles, this court will not go out of the record to find

evidence to impeach the proceedings and judgment of a tribunal having by the record full and complete jurisdiction of the subject matter on which its judgment has been exercised. *State* v. *Boscawen*, 8 Foster 195; *White* v. *Landaff*, 35 N. H. 128; *Stevens* v. *Goffstown*, 1 Foster 454; *Toppan's Petition*, 4 Foster 50; *Kennet's Petition*, 4 Foster 141.

Upon this view, the evidence admitted on the trial against the objection of the State, tending to prove facts calculated to contradict the material allegations of the original petition, and to oust the Court of Common Pleas of jurisdiction, by showing the highway in controversy to have been necessary only as part of a continuous route in Rye and North-Hampton, should not have been received. As, however, a verdict was properly directed against this evidence, its admission did not in any way affect the result.

We have thus disposed of all the questions arising upon the case before us. In the argument, however, the defendants insist that if the court had jurisdiction, and the highway were properly laid out and established, or the town is precluded from now objecting to the validity of the proceedings establishing it, still, the neglect to build it was no nuisance under the circumstances shown in evidence at the trial, the road being wholly within an uninhabited pasture, and having no connection with any existing highway except at one extremity, and the public having no means of access to it from the other end, and no occasion to use it without such means of access. It is, moreover, suggested that the road as laid out is not sufficiently connected with an existing highway, even at its eastern terminus. The latter suggestion does not seem well founded upon the face of the report, for although the petition commences at the corner of the Pickering pasture, the report commences at a stake in the highway at that point; so that the fair presumption is, that the highway was laid three rods in width, as well opposite the angle of the pasture as elsewhere throughout its route. Even if but a rod and a half wide at that point, as contended by the counsel for the town,

that width might be sufficient to accommodate the travel, until the defect could be remedied.

It is very clear, upon the evidence reported as given at the trial, that no public highway was shown to exist in North-Hampton with which the highway in controversy was connected at its western terminus. It appeared that the selectmen of that town had undertaken to establish a road in accordance with a vote of the town, and without any petition asking them to lay it for the public accommodation. The town had no authority to act themselves or to instruct the selectmen, and could give the selectmen no authority. Without a petition, the selectmen had no jurisdiction in the premises, and the road they undertook to lay was not established in conformity to statute law, and was, therefore, not a public highway. Rev. Stat., ch. 53, sec. 7 ; *Haywood* v. *Charlestown*, 34 N. H. 23.

There having, then, been shown to be no public highway at one extremity with which the proposed highway had connection, and no open way of any kind there ; and the whole extent of the proposed road being through an uninhabited pasture ; the evidence, moreover, tending to show that there was no occasion for the public to use it except in connection with what was not a public highway in North-Hampton ; the question whether Rye was guilty of a nuisance, in not building and keeping in repair such a road, might well have been raised on the trial. If the public had no means of access, and no occasion by and upon which they could use the new highway, it could be no nuisance not to build and keep it in repair. *State* v. *Boscawen*, 8 Foster 226.

But this question was not raised on the trial. The only objections then taken were to the want of jurisdiction and the irregularity of the proceedings of the court in laying out the highway. Had it been proposed to submit the question of nuisance to the jury, a very different aspect might have been given to the evidence. Access to the western extremity of the road might have been shown to exist in various ways. The public might have had

the right to pass over the road in North-Hampton by that town having purchased the land for the purpose, or by its owners having dedicated it to the public use, or there might have existed a general or special license from the land-owners so to use it; or the jury might have found the highway useful and convenient for the public, with means of approach to it only from the eastern terminus. There would be manifest injustice in deciding any case upon a point not raised at the trial, and which the parties, therefore, had no opportunity to meet, although such a point might properly have been raised on the evidence. Had the defendants requested the court to submit the question of nuisance to the jury, and that request been refused; or had the attention of the court been in any way directed to that subject with a view to its submission to the jury, and a verdict been thereupon directed for the State, the matter would have been legitimately before us, and we might have felt compelled to set aside the verdict and grant the defendants an opportunity of submitting the question of nuisance to the jury. But nothing of this kind appears, and there is, therefore, no occasion for interference for that cause.

As the objections taken to the validity of the proceedings of the Court of Common Pleas in establishing the highway described in the information, are insufficient, there must be

*Judgment on the verdict.*