## BRYANT v. OSGOOD.

An officer, having a writ of attachment against A, went to the barn where some hay was stored, and there posted a paper, written thus: "I have attached all the hay in this barn, in which [A] has any interest." A knew at the time, and the plaintiff soon after, and prior to his subsequent purchase of the hay of A, of the posting of this notice and its contents. The officer made return upon the writ, to the effect that he had "attached all the * * * hay * * * in the town of W., in which the said A has any right, title, interest, or estate; and on the same day left at the office of the town clerk of said town a true and attested copy of this writ, and of this my return indorsed thereon." *Held*, that these proceedings did not constitute a valid lien upon the property, as against the plaintiff.

The statute, which provides that an attachment of bulky and ponderous articles shall not be defeated or dissolved by any neglect of the officer to retain actual possession thereof, provided he leave an attested copy of the writ, and of his return of such attachment thereon, as in the attachment of real estate—Gen. Stats., ch. 205, sec. 16—requires that the return should be so certain and explicit, in its description of the property

and its situation, as to give to subsequent attaching creditors or pur-
chasers substantially the same notice they would derive from knowledge
of the actual retention of possession of the property by the officer.

TROVER, by John S. Bryant against Joseph D. Osgood, for twenty
tons of hay. The action was tried by the court.

In March, 1867, the plaintiff conveyed to Martha J. Smith, wife of
one Elijah L. Smith, a farm in Warren, taking notes for the price of
the same, and taking back a mortgage thereof to secure said notes.
The mortgage was given to secure the purchase money for the same,
and for the personal property thereon. Upon the same day said Bry-
ant took a mortgage from said Martha J. Smith of certain personal
property, being stock, farming tools, and sugaring utensils, " the same
we this day bought of said Bryant." " Also, all the crops of every
description that may grow on the land this day sold to me, the said
Martha, until the money hereby secured is paid." This mortgage was
signed, and the oath thereto was taken and subscribed, by said Elijah
L. Smith and the said Martha, and was given to secure some of the
notes which were given for the farm and personal property, and which
were also secured by the mortgage on real estate. This mortgage was
recorded in the town clerk's office. Smith and his wife lived on this
farm, and Smith carried it on, and cut timber, and wood, &c.; and
February 26, 1869, he made his first payment on the notes to Bryant.
In the summer of 1869, Smith cut the hay on said farm, and put the
same in the barn on said premises, where it remained until it was
afterwards sold by Osgood.

September 10, 1869, Osgood, the defendant, as deputy sheriff, had a
writ in favor of Weeks, Whitton & Co., and against said Elijah L.
Smith, in his hands for service. He went into the barn where the hay
now in controversy was situated, it being the hay cut by said Smith on
said farm in the summer of 1869, saw the hay, and put up a paper in
the barn with the following notice upon it : " I have attached all the
hay in this barn, in which Elijah L. Smith has any interest. J. D.
OSGOOD, Deputy Sheriff. Sept. 10, 1869." Said Smith knew at the
time, and Bryant soon after, of the posting of this notice and its con-
tents. Said Osgood made the following return upon said writ :

" Grafton ss. Sept. 10, 1869. I attached all the wood, hay, bark
and lumber, lands and tenements, in the town of Warren, in which
the within named defendant has any right, title, interest, or estate, and
on the same day I left at the office of the town clerk of said town,
James B. Eastman, a true and attested copy of this writ, and of this
my return indorsed thereon. J. D. OSGOOD, Deputy Sheriff."

The claim of Weeks, Whitton & Co. against said Elijah L. Smith,
upon which this suit was brought, was a just and legal debt.

On the 13th of October, 1869, said Osgood advertised said hay to be
sold upon the writ, and on the 20th of the same October, he sold the
same according to said notice, and duly returned the proceeds upon
the writ, to be applied on execution. Said Osgood's proceedings, in

selling the property on said writ, were according to the requirements of the statute.

On October 2, 1869, said Bryant and said Smith and his wife made an arrangement by which Smith and wife gave up to Bryant all the personal property on the farm, and all the crops; and the amount, as agreed, was indorsed on Bryant's notes, secured by said mortgages; and on the same day the Smiths quitclaimed their interest in the farm to Bryant, in consideration of which he indorsed the balance due on all said notes as fully paid; and Bryant thereupon took possession of said personal property and crops, and advertised the same for sale, and also took possession of said farm. Martha J. Smith had no property of her own with which to pay for this farm at the time of its purchase, and said Elijah L. carried on this farm in the season of 1869, and cut the hay in question, with the understanding and arrangement between him and his wife that he should have and use this hay, and the other crops of that year, as his own, subject only to such claim as Bryant might have thereon. The plaintiff claimed that no valid attachment of this hay was made by Osgood, which would hold as against his purchase and possession of Oct. 2.

The defendant claimed that his attachment of Sept. 10 is good as against Bryant's purchase of Oct. 2.

The questions of law, thus raised, were reserved for the consideration of the whole court.

If, upon the decision of these questions of law, the plaintiff should be held entitled to recover, the court assessed his damages at the sum of $91.62, with interest from Oct. 20, 1869 : judgment to be rendered for the plaintiff for this sum, together with his costs of court, or judgment to be rendered for defendant for his costs.

*Bryant, pro se.*

No attachment of personal property was made by Osgood at all. In such a case, hay may be attached (seized), and a copy of writ and return left with the town clerk, which shall merely supersede the necessity of removing the hay, or placing a keeper over it, and to save expense. The return on the copy is required to give notice to all the world of the identical hay—where it is, in what barn it is, &c. Nothing short of that would give the required notice. Osgood's pretended attachment was of all the hay in town, as much in one barn as another, and his return is conclusive. What hay, then, did Osgood attach? He did not pretend to seize any hay in town unless Smith had an interest in it; and if such a notice had been stuck in every barn in town, it would have just corresponded with his return on the writ and copy.

Personal property cannot be attached in such a loose way : if it can be, it will always be so done, and the officer avoid all responsibility to either creditor, debtor, or third person. Osgood, therefore, did not

seize or take into his possession or control, either actual or constructive, any personal property, only all in town that Smith had any interest in, which is no attachment at all.

*Putnam*, for the defendant.

The first point raised in this suit is, Was a valid attachment made of the property in question, by the sheriff, on September 10, 1869 ?

If an officer, with a purpose of attaching personal property, obtain access to and control of it, the attachment is complete. *Morse* v. *Hurd*, 17 N. H. 246. To constitute a valid attachment of goods, there should be such a seizure of them, and subjection to the control of the officer, as the nature of the property will admit of. *Treadwell* v. *Brown*, 43 N. H. 292. The case finds that Osgood went into the barn where the hay was, saw the hay, and posted a notice therein of what he had done,—which, we submit, is all that he could have done, and was sufficient notice to every one of the attachment.

FOSTER, J. At common law, the doings of an officer in respect to personal property cannot amount to a valid attachment, unless the articles are taken into his actual custody, or are placed under his exclusive control. *Odiorne* v. *Colley*, 2 N. H. 68. The articles must be within the power of the officer. He must continue to retain this power over them by remaining present himself, by appointing an agent in his absence, by taking a receiptor for the property, by inventorying and marking them, or by a seasonable removal of them. *Huntington* v. *Blaisdell*, 2 N. H. 317 ; *Runlett* v. *Bell*, 5 N. H. 433 ; *Chadbourne* v. *Sumner*, 16 N. H. 129 ; *Young* v. *Walker*, 12 N. H. 506 ; *Weston* v. *Dorr*, 25 Me. 176. The officer must take possession of the goods. It is not necessary that they should be removed, but they must in all cases be put out of the control of the debtor. *Dunklee* v. *Fales*, 5 N. H. 527 ; Drake on Attach., sec. 256.

There was no valid attachment of this hay by proceedings at common law, for the property was not taken into the actual custody of the officer, nor was any agent or receiptor appointed to hold the property in the absence of the officer, nor was it put out of the control of the debtor.

But the statute has provided for dispensing with all these requirements in the case of bulky and ponderous articles, such as unthreshed grain, hay, potatoes, lumber, wood, machinery, &c., by authorizing the officer attaching such property to "leave an attested copy of the writ, and of his return of such attachment thereon, as in the attachment of real estate ; and in such case the attachment shall not be dissolved or defeated by any neglect of the officer to retain actual possession of the property." Gen. Stats., ch. 205, sec. 16.

If the sheriff in this case fulfilled the requisition of the statute, his attachment was and remained valid,—that is, the lien acquired by the caption of the property was retained by the officer, and the plaintiff,

as a subsequent purchaser of the hay, could acquire no title ; but if the terms of the statute were not fulfilled, the lien of the officer was lost, and the attachment dissolved.

By the statute, a public record of the return of the property attached is made a substitute for the retention of possession by the officer or his agent, and its purposes would not be subserved nor its spirit maintained by any such effort at compliance with the terms of the statute, or by any such construction of its provisions as should fail to furnish a subsequent attaching creditor, or a purchaser of the property from the debtor, substantially and practically the same information as would be derived from knowledge of the officer's retention of possession at common law.

The defendant's return, a copy of which was left with the town clerk here, gave information that he had attached all the hay in the town of Warren in which Smith had any interest ; but with regard to quantity, or any particular location, and whether the hay was in one or more different lots or localities, there was no specification in the return ; and if, ten days after the filing of this return, a purchaser, or a subsequent attaching creditor, should find a quantity of hay, either upon or not upon the premises occupied by Smith, he could have no knowledge or information, derived from inspection of the town clerk's records, as to whether such lot of hay had been attached or not ; and a dispute would instantly arise between the purchaser, or subsequent attaching creditor, and the officer, as to the identity of the property ; and infinite confusion would result, contrary to the demands of public policy.

We are clearly of the opinion that the return, in this case, was insufficient for the preservation of the officer's lien upon the hay ; and that, by reason of this insufficiency, the attachment was dissolved prior to the purchase of the property by the plaintiff on the 2d day of October. " The return," says Mr. Drake, "should state specifically what the officer has done." Drake on Attach., sec. 205. And, again : " By the general principles of law, independent of any statutory regulation, the officer is bound to give, as nearly as it can reasonably be done, in his return, or in a schedule or inventory annexed thereto, a specific description of the articles attached, their quantity, size, and number ; and any other circumstances proper to ascertain their identity.   *   *   *  It does not seem, however, that any more precision should be exhibited in the return than is necessary for the identification of the property.   Hence, where a sheriff returned an attachment of four horses (describing their color), it was held sufficient.   So, where an officer returned all the ' stock of every kind,' in a woollen factory, particularly described, specifying the stock as a ' lot of dye-wood, and dye-stuffs,' ' lot of clean wool,' ' sixteen pieces of black, Oxford-mixed cassimere,' ' twenty-five pieces doeskins and tweeds,' ' fifty-one pieces of unfinished cloth,' ' lot of cotton wool,' ' cotton wool, oils,' &c., ' in said woollen factory,' the return was held sufficient,"—citing *Ela* v. *Shepard*, 32 N. H. 277.

But concerning this return, it was remarked by the court, FOWLER, J.,

that, although sufficient, "it was, perhaps, more general than desirable."

In *Baxter* v. *Rice*, 21 Pick. 199, SHAW, C. J., says,—"It is highly important, upon grounds of public policy, that a good degree of exactness and particularity should be observed in returns on mesne process, to show their identity, and thereby more definitely to fix the rights and responsibilities of all parties in relation to them." And see *Pierce* v. *Strickland*, 2 Story 292; *Toulmin* v. *Lesesne*, 2 Ala. (N. S.) 359.

In *Haynes* v. *Small*, 22 Me. 14, it was held that "if an officer returns on a writ that he has 'attached one hundred and seventy-five yards of broadcloth, the property of the within named defendant,' it is not competent for him, in an action for not producing the property to be taken on the execution, to show that but thirty yards were in fact attached by him, he not having measured but only estimated the quantity of cloth," WHITMAN, C. J., remarking,—"Officers ought to know what they attach, and to be holden to exactness and precision in making their returns. Neither the debtor nor the creditor would be safe if it were otherwise. And it will be well that the law should be so promulgated and understood. An officer, in such cases, is intrusted with great power. He may seize another man's property without the presence of witnesses, whether it be goods in a store or elsewhere; and safety only lies in holding him to a strict, minute, and particular account. To hold that he may indifferently make return of his doings at random, and afterwards be permitted to show that what he actually did was entirely different, would be opening a door to infinite laxity and fraud, and mischiefs incalculable. Suppose the deputy had returned that he had attached one hundred and seventy-five sheep: he might as well be permitted to show that, by mistake, there were but thirty of them. It was the duty of the officer to have measured the cloth attached, or in some other way to have ascertained precisely what he had attached. Such a mistake as is here pretended could have arisen only from the grossest negligence, to which it would be a disgrace to the law to afford its countenance."

But it may be said that since the statute provides that the officer attaching hay, &c., "may leave an attested copy of the writ, and of his return of such attachment thereon, as in the attachment of real estate," the return in this case must be regarded as sufficient, because it is commonly understood that a return of an attachment of all the defendant's real estate in town, without any other description, is sufficiently explicit.

It is to be observed, however, that the provision is not that the attachment may be made, as in case of real estate, *by* leaving a copy. Indeed, no attempt is made to change the mode of making the attachment, but a new and easier method of preserving it is provided. Before the statute there was not so much difficulty in making as in preserving attachments of the various articles enumerated in section 16 of chapter 205 of the General Statutes. See *Scott* v. *Print Works*, 44 N. H. 508.

Probably an attachment of real estate, by leaving a copy of a return expressed in such general terms, would be held sufficient, if the point were distinctly raised, on the ground that since the law provides for the registration of land titles, a reference to the county records would disclose the precise property referred to in the officer's return, and *id certum est*, &c.

But that argument will not avail this defendant, there being no analogy between the case of real and personal estate in that particular, and no registration being required of a man's acquisitions of personal property, to which an inquirer may have access, in order to ascertain what is included by a general designation of property in an officer's return ; and the expression used in the 16th section simply means that, as real estate may be attached by leaving a copy, &c., " at the dwelling-house of the town clerk," so an attachment of personal property may be preserved, by leaving a copy of a sufficient and proper return at the dwelling-house of the town clerk, " as in the attachment of real estate."

A reasonable degree of certainty is required, even in attachments of real estate. Thus, in *Whitaker* v. *Sumner*, 9 Pick. 308, a return of " all the right, &c., to a piece of land, with the buildings thereon, situate in Columbia street," was held sufficient, because it was said,— " Huntington had only one house in the street, so that the property attached could be readily ascertained, and *id certum est.*"

So in the present case: if the return had been of all the hay in the barn occupied by the defendant, although inexcusably loose and irregular, so much so that the officer could not have resorted to parol evidence to explain, for his own protection, the quantity of hay included in the attachment, yet, as against third persons, the return, perhaps, might have been regarded as sufficiently explicit,—as in *Reed* v. *Howard*, 2 Met. 36, where the officer attached " all the wood and coal of the defendant lying on a lot of land belonging to B. H., situate in B. ;" and DEWEY, J., said,—we do not " perceive any objection to the validity of the attachment, arising from the generality of the description of the property in the officer's return, taking into consideration the nature of the property attached and the entire recital found in the return."

It is said in *Taylor* v. *Mixter*, 11 Pick. 347, " any description which would be sufficient to pass the land by a deed, will answer for an attachment." To the same effect is *Howard* v. *Daniels*, 2 N. H. 137, in which WOODBURY, J., says the object of an attachment is " merely to caution the public and the debtor that the land attached is intended to be considered by the creditor as eventual security for his debt. A description of it, therefore, as ' the farm the defendant now lives on, with his tannery, &c., thereon,' could not fail to apprise the defendant, and all others in interest, what premises were intended. Our statute concerning attachments does not, like that concerning extents, require the ' metes and bounds' of the land to be set out ; and in deeds, where the title itself passes, the same certainty contained in this return

suffices ; for there the rule always is, *id certum est, quod certum reddi potest*.

In *Hathaway* v. *Larrabee*, 27 Me. 449, the officer, upon a writ against three defendants, returned that he had attached all the right, &c., " the defendant has in and to any real estate in the county of Penobscot." It was held that the language was too vague and uncertain to create a lien by attachment on the estate of either one of the defendants." SHEPLEY, J., remarked,—" No person should be deprived of his right to sell or to purchase an estate as free from incumbrance, when he cannot ascertain, by an inspection of the officer's return, that it has been attached."

But the defendant contends that the posting of a notice in the barn was sufficient proclamation to all the world, and to Bryant in particular, who knew of the posting of the notice and its contents, that this particular hay had been attached.

There is no doubt about that. The attachment was well enough. The question is, Was it preserved, or dissolved ? It was not preserved by any retention of possession by the sheriff or an agent of the sheriff, by the exclusion of the debtor from the custody and control of it, by removal of the property, or by taking a receipt for it. And we have seen that it was not preserved by such a return as the law required for a substitute for the common law requisitions.

The simple question then is, whether the plaintiff, a subsequent *bona fide* purchaser, is to be excluded from acquiring title to the property, by reason of notice of. an abortive attempt of an attaching creditor, through the agency of an incompetent or careless officer, to make and preserve a valid attachment.

Preliminary to the answering of this question, it may be remarked that, as between an attaching creditor and a *bona fide* purchaser, there can be no superiority or preference, upon any equitable considerations.

Bryant had notice of the attachment, and was bound by it ; but the attaching creditor was equally bound to fulfil the requirements of the statute if he would *preserve* the lien which, as against Bryant, he had obtained.

The most that can be said, then, is, that Bryant had notice of an attachment, which the attaching creditor virtually abandoned.

Bearing in mind that the statute was not intended to change the mode of making the attachment, but only to provide a new and easier method of preserving it when made *(Scott* v. *The Print Works*, before cited), that the leaving of a copy of the return with the town clerk is merely a substitution for the retention of actual possession or other legal equivalent by the officer, the pertinency and conclusiveness of the cases of *Young* v. *Walker*, 12 N. H. 502, and *Chadbourne* v. *Sumner*, 16 N. H. 129, as authorities upon this branch of the subject, will be apparent. These are to the effect that " where a sheriff merely knows that property has been attached by another officer, if no possession be retained, he may make a valid attachment." Why ? Not because no regular and valid attachment has been made by the first officer, but

because the lien created thereby has not been preserved by the retention of possession requisite for that purpose; and full knowledge of all the particulars, by a subsequent attaching creditor, will not reinstate the prior creditor in the rights which he has lost through the negligence or ignorance of the officer employed by him to acquire and retain those rights.

In *Chadbourne* v. *Sumner*, the defendant, a subsequent attaching creditor, had a very similar notice of an attachment of hay to that which the plaintiff in the present case had—a written notice posted on the barn, and a notice in red chalk thereon ; but since the defendant, the first attaching officer, did not employ any agent to take charge of the hay (this was before the present statute), it was held that the first attachment was dissolved, and that the defendant might lawfully attach the property notwithstanding his notice.

So, in *Bagley* v. *White*, 4 Pick. 398, where goods attached were put into the debtor's store, but the sheriff did not keep the key, and had no control over the store, nor any possession by any one, as his servant, for thirty or forty days after the goods were put there, the attachment was held to be lost, as against another officer who knew these facts.

In *Young* v. *Walker*, it was said by the court, GILCHRIST, J.,—"Where the officer finds property in the possession of the debtor, the mere knowledge on his part that the property has been attached will not prevent him from making a valid attachment of it. But if he knew that there is a subsisting attachment and an unrescinded contract of bailment, although the debtor might at the time have the possession of the property, he cannot acquire a lien by attaching it. And these principles are not unreasonable. If the officer find property in the possession of the debtor, and know only that it has once been attached, he might well presume that it was there, because the suit had been compromised and the attachment dissolved. But if he knew that the attachment and the bailment still subsist, and that the property is in the hands of the debtor merely for his temporary convenience, he will not be misled, and can make no such presumption ;"—and see *Carpenter* v. *Cummings*, 40 N. H. 158.

It will be said that there is a distinction between these cases and the present in this, that, in the cases cited, the subsequent attaching officer may have had good reason to suppose that the suit had been compromised, and the property purposely released ; whereas, in the present case, the plaintiff must have known that there had been no intentional abandonment of the security,—and this is undoubtedly true ; but the admission only brings us back to the proposition that a subsequent attaching creditor, or purchaser in good faith and for value, is not to be prejudiced by mere knowledge of a failure by his adversary to comply with the statute requisitions, positively essential to the preservation of his security.

The statute which provides that upon the filing of a copy of a sufficient return with the town clerk "the attachment shall not be dis-

solved," by necessary implication provides that if such return be not filed, it *shall* be dissolved.

If it be said that this result is a hardship upon the attaching creditor, the answer is furnished by GILCHRIST, J., in *Young* v. *Walker :* " The care of his rights was entrusted to [the defendant] his agent; and if that agent have so conducted as to sacrifice any of those rights, the creditor has his remedy against him.  It does not follow, because this suit [can] be maintained, that the benefit of the attachment must be lost."

There must be judgment for the plaintiff, according to the finding of the court below.