Aug. 12, } 1875. }      MOORE *v.* KIDDER.

*Attachment in equity proceedings—Unrecorded deed.*

A writ of attachment, ordered by a single justice of the supreme judicial court, in an equity suit, under General Statutes, ch. 190, sec. 7, and Laws of 1869, ch. 15, was made returnable at a general term of the whole court at Concord. *Held*, no error.

A return by an officer, that he has attached all the real estate owned by the defendant in the town of K., constitutes a valid attachment of all lands which come within that description, and it makes no difference that at the time of the attachment the defendant had conveyed away all his lands in the town of K. by a deed which had not then been recorded.

A bill in equity, in aid of the remedy at law, may be sustained against one summoned as trustee, when it appears that he is fraudulently putting his property beyond the reach of legal process in order to prevent the collection of the judgment which he anticipates may be rendered against him as such trustee.

WRIT OF ENTRY, to recover a tract of land in East Kingston. Plea, *nul disseizin.* The plaintiff offered in evidence a deed from Ezra P. Downing to her, dated October 22, 1872, and recorded November 9, 1872; also, a deed from Harry Downing to Ezra P. Downing, dated March 9, 1871, and recorded November 9, 1872; also, a deed from Samuel L. Blaisdell to Harry Downing, dated October 19, 1869, and recorded November 9, 1872,—all conveying the demanded premises, of which it was admitted that said Blaisdell was in possession at the time of his conveyance.

The defendants offered in evidence a levy made February 21, 1873, upon a judgment recovered by them against Harry Downing, February 10, 1873, in the supreme judical court for Hillsborough county, in a cause in equity in which the demanded premises were attached May 24, 1871. It was not denied that Harry Downing was in possession of the premises at the time of his conveyance to Ezra P. Downing, and remained in possession till after said attachment. Ezra P. Downing, being called by the plaintiff, testified that Harry Downing remained in possession as his tenant until he conveyed the premises to the plaintiff.

The plaintiff not claiming that the defendants at any time previous to their attachment had any notice of the conveyance from Harry Downing to Ezra P. Downing, the court, subject to the plaintiff's exception, ordered a verdict for the defendants,—it being agreed that the plaintiff should have liberty at a subsequent time to make objections appearing on the face of the papers to the regularity of the proceedings on which the defendants rely. The plaintiff, accordingly, after the

trial, made the following objections to said proceedings: (1) The attachment and order therefor were not authorized by the laws of this state; (2) the order of attachment which should have been made by the court was made by a single judge; (3) the order of attachment was erroneously made returnable at Concord; (4) the attachment was general of all the real estate of Harry Downing in town, and did not specifically refer to the premises in controversy; (5) the matters alleged in the bill in equity were not matters of equitable jurisdiction; (6) the award made by A. P. Carpenter, referred to in the bill, was not authorized by the submission, and was void; and so the decree upon the bill in equity was void.

The records in the case *Kidder & Hill* v. *Page & Martin*, principal defendants, and *Harry Downing* trustee, also in the case in equity between the same parties, are made part of this case.

*Wood*, for the plaintiff.

*C. R. Morrison* and *Goodall*, for the defendants.

LADD, J. The first objection is, that the attachment and order therefor were not authorized by the laws of this state. The attachment was granted upon a bill in equity, by a single judge of the supreme judicial court in vacation, and made returnable at the law term of that court at Concord.

A complete answer to this objection, as well as the two following, seems to be furnished by the statutes. Sec. 7, of ch. 190, Gen. Stats., provides that "upon the application of any party to a suit in equity, an order may be made, when it appears to be required for his security, for a writ of attachment in his favor, in such form and returnable as the court may direct against the estate or property of any other party." And by ch. 15, Laws of 1869, this section is amended "so that the order for a writ of attachment against the estate or property of a party to a suit in equity may be made by the supreme court in term time, or any justice thereof in vacation." It is impossible to see upon what ground it can be said that the order and attachment were not authorized by the laws of this state, or that there could be any error in making it returnable at the time and place of holding a general term of the whole court.

The fourth objection is, that the attachment was general of all the real estate of Harry Downing in town, and did not specifically refer to the premises in controversy.

It is a matter of observation, that although it has doubtless been a common practice for many years to make an attachment of the real estate of a debtor by leaving with the town-clerk a return in the same form as that used here, the sufficiency of such return has never been called in question, and we have no decision directly sustaining it. I am unable to account for this upon any other ground than that the case of *Howard* v. *Daniels*, 2 N. H. 137, has been universally regarded

by the profession as settling the rule, to be applied in such cases, so broadly as to leave no room for question as to the sufficiency of such return. The general doctrine there laid down is, that the description is sufficient, if by such description the land would pass in a deed. This case was decided in 1819. The exact point was raised in Massachusetts, a few years afterwards, in *Taylor* v. *Mixter*, 11 Pick. 341, where the court held that a return by an officer, that he has attached all the right and interest of the debtor in any lands in the town of E., constitutes a valid attachment of any land coming within this general description. SHAW, C. J., in delivering the opinion of the court, says,— "That such a general description is sufficient in an attachment has been decided in Maine and New Hampshire"— citing *Crosby* v. *Allyn*, 5 Greenl. 453, and *Howard* v. *Daniels*, 2 N. H. 137.

The fact that the question has not been since raised in this state would seem to show that the profession here must have taken the same view of that case as an authority. In *Bryant* v. *Osgood*, 52 N. H. 188, FOSTER, J., says,— "Probably an attachment of real estate, by leaving a copy of a return expressed in such general terms, would be held sufficient, if the point were distinctly raised, on the ground that, since the law provides for the registration of land titles, a reference to the county records would disclose the precise property referred to in the officer's return, and *id certum est*, &c."

I am of opinion that the return must be held sufficient to create a valid lien on all the land of Downing which came within its general terms.

The plaintiff's counsel, in argument, claimed that the attachment was only of Downing's interest in lands in East Kingston, and that this makes a difference, inasmuch as Downing, in point of fact, had parted with his interest before the attachment. The material part of the return is in these words: "I attached all the real estate owned by the within named Harry Downing and Samuel Page in the town of East Kingston in said county, or either of them, or of which they have any right, title, interest, estate, or demand of, in, or unto, by leaving," &c.

If the premises had been specifically described in the return, no question would be made but that the attachment must take precedence of the plaintiff's unrecorded deed. But that would be holding by attachment property to which the debtor himself could assert no title; and the hardship upon an innocent grantee would be precisely the same. By the law, priority of record is made to govern the rights of the parties; and if an attachment, which the law recognizes as valid, be once effected by leaving a copy of the writ and return at the dwelling-house of the town-clerk, it is impossible to see how such attachment can be defeated by the subsequent recording of a deed of the same premises, which had been executed before the attachment, any more because the attachment was made by a general than if it had been made by a specific description.

The fifth objection is, that the matters alleged in the bill in equity were not matters of equitable jurisdiction. It appears, from an exam-

ination of the papers made part of the case, that the attachment was made upon a writ ordered by Mr. Justice SARGENT, in a bill in equity brought by these defendants against Harry Downing and Samuel Page, which sets out the pendency of a suit at law in favor of the defendants against said Page and one Eleazer Martin, since deceased, in which said Downing was summoned as trustee of said Page & Martin; that the question of the chargeability of said Downing had been referred, and was then pending before the referee; that the plaintiffs anticipated a report in their favor; that Downing, also anticipating a report against him, was intending and endeavoring to sell and dispose of, or carry away, all his property and effects open to attachment, for the express purpose of preventing the collection of any execution the plaintiffs might recover against him in that suit; and that the plaintiffs had no security for the payment of such execution. The bill also alleged, as the ground of said Downing's liability as trustee of said Page & Martin, a fraudulent conveyance by them to him of their property, made in 1865, with intent to put the same beyond the reach of their creditors, and prays that said Downing be ordered to pay the plaintiffs the amount of their debt against Page & Martin, and for an injunction restraining him from conveying away and disposing of his property, &c.

At the September term, 1872, the plaintiffs filed a supplemental bill, setting out the report of the referee and judgment thereon against Downing as trustee for the amount of their judgment against Page & Martin, being $893.77, and the further sum of $1,024.19, being costs, which the trustee was adjudged liable to pay; that the plaintiffs had no security or adequate remedy for the collection thereof, other than their attachment in said bill in equity, and praying that said Downing be decreed to pay said sum. An amendment of said supplemental bill was filed at the same term, setting out other facts not now necessary to be rehearsed. At the January term, 1873, there was a decree, in accordance with the prayer of the bill and supplemental bill, that the plaintiffs recover of said Downing the amount of their judgment in the suit at law, together with the costs allowed against him as aforesaid, and an execution was issued for enforcing said decree. This is the execution upon which the levy was made, under which the defendants claim title.

It is to be observed that the attachment was made May 24, 1871, while the plaintiffs' deed was not executed until October 22, 1872, almost a year and a half afterwards; and it is claimed that she is not in a position to question the regularity or validity of the proceedings in which the attachment was issued, or of the attachment itself. But, admitting that she may do so, I am unable to discover any ground upon which her objection can be sustained. The bill distinctly charges a fraudulent intention and attempt on the part of Downing to dispose of his property and put it beyond the reach of his creditors, for the purpose of defeating the plaintiffs in the collection of any judgment they might obtain against him in a suit at law, and asks for an injunction to prevent that mischief and wrong. I think the bill very clearly shows

a case for equitable interference in aid of the remedy at law. Without such interference, upon the allegations of the bill, the suit at law would be rendered fruitless by the active fraud of the defendant.

The sixth objection is, that the award made by A. P. Carpenter, referred to in the bill, was not authorized by the submission, and was void ; and so the decree upon the bill in equity was void. The court have not been furnished with the submission or award, and it seems sufficiently clear that we could not go into the inquiry suggested by this objection had they been laid before us. I think the objections must all be overruled.

SMITH, J. As between Downing and these defendants the attachment was undoubtedly valid, and gave them a perfect lien for their claim then in suit. The plaintiff, however, claims that, as between her and the defendants, Harry Downing did not own the premises, and had no title or interest therein, and therefore that the defendants took nothing by their attachment, and consequently took nothing by their levy. The question is, whether, as between the parties to this suit, the premises are deemed to have been the estate of Harry Downing, liable to attachment for his debts ; and I think the question must be answered in the affirmative.

It will not be denied that, if the officer had in his return set forth a specific attachment of these premises as the property of Harry Downing, such an attachment would have been good. But it is objected that the officer has returned that he attached all the real estate of Harry Downing in East Kingston ; that, consequently, such an attachment would only hold such real estate as he then owned in that town ; and, as he in fact did not own any, having previously conveyed to his brother, Ezra P., there was no real estate which the officer could or did attach.

By Gen. Stats., ch. 121, sec. 4, no deed of real estate " shall be valid to hold the same against any person but the grantor and his heirs only, unless recorded." The object of the statute is to give notice of the conveyance, and it has therefore been held in numerous cases, that, if a subsequent purchaser or creditor have notice of a prior conveyance, this is equivalent to a record. *Stone* v. *Meserve,* 13 N. H. 46, where it was held that a record of a mortgage of personal property, in the town where the mortgagee resides, is of no validity ; and where it was also held, that a record of a mortgage, after an attachment or levy on the property mortgaged, cannot avail to defeat the creditor's title.

In *Whittemore* v. *Bean,* 6 N. H. 47, it was held, that if the grantor of an unrecorded deed of land, or his heir afterwards, for a valuable consideration convey the land to another purchaser, who has no notice of the unrecorded deed, the last conveyance will prevail against the first; and that the devisee of the grantor would stand on the same ground as his heir.

By statute, except as against the grantee and his heirs and those

having notice of its existence, a deed takes effect only from the time of its being recorded. Hence it follows, that any attachment or return of an attachment that would be good against the grantor must be good against any one claiming under him by a subsequent deed, or by an unrecorded deed executed before the attachment, of which the attaching creditor had no notice. If an attachment made in the form of that made by these defendants would have been good against Downing if he had continued to own the land until his creditors levied their execution, I can see no reason or principle why they should be required to make it any different when they had no knowledge or means of ascertaining the existence of an unrecorded deed, especially when, from the continued occupation and possession of the land by Downing, they had every reason to suppose the title continued in him. The language of our statute is, that such unrecorded deed " shall not be valid to hold the land." A deed not valid is an invalid deed, or one without any vitality, and inoperative to pass the title as against all persons without notice of its existence.

The case of *Earle* v. *Fiske*, 103 Mass. 491, is directly in point. AMES, J., remarks,—" The title passes by the deed, and not by the registration. No seizin remains in the grantor, and he has literally nothing in the premises which he can claim for himself, transmit to his heir at law, or convey to any other person. But when the effect of the deed upon the rights of third persons, such as creditors or *bona fide* purchasers is to be considered, the law requires something more, namely, either actual notice, or the further formality of registration, which is constructive notice. It may not be very logical to say that after a man has literally parted with all his right and estate in a lot of land, there still remains in his hands an attachable and transferable interest in it, of exactly the same extent and value as if he had made no conveyance whatever. But for the protection of *bona fide* creditors and purchasers the rule has been established, that, although an unrecorded deed is binding upon the grantor, his heirs and devisees, and also upon all persons having actual notice of it, it is not valid and effectual as against any other persons. As to all such other persons, the unrecorded deed is a mere nullity. So far as they are concerned, it is no conveyance or transfer which the statute recognizes as binding on them, or as having any capacity adversely to affect their rights as purchasers or attaching creditors. As to them, the person who appears of record to be the owner is to be taken as the true and actual owner, and his apparent seizin is not divested or affected by any unknown and unrecorded deed that he may have made."

The form of the officer's return in this case is one that has been very generally adopted in this state for more than half a century, and probably since the earliest history of the state. It has become a settled rule of property, and it would be little less than disastrous to hold it insufficient, although a more definite description might often be desirable. In *Taylor* v. *Mixter*, 11 Pick. 341, a return by an officer, that " he had attached all the right and interest of the debtor in any

lands in the town of E.," was held to constitute a valid attachment of any land coming within such general description. Although the return in *Howard* v. *Daniels*, 2 N. H. 137, was less general, yet the reasoning of the court supports the principle laid down in *Taylor* v. *Mixter*, where *Howard* v. *Daniels* is cited by SHAW, C. J. In *Bryant* v. *Osgood*, 52 N. H. 188, the officer returned that he " attached all the wood, hay, bark, and lumber, lands and tenements, in the town of Warren, in which the within named defendant had any right, title, interest, or estate." FOSTER, J., remarks,—" Probably an attachment of real estate, by leaving a copy expressed in such general terms, would be held sufficient, if the point were distinctly raised, on the ground that since the law provides for the registration of land titles, a reference to the county records would disclose the precise property referred to in the officer's return, and *id certum est*, &c."

Usually such a general attachment would give a *bona fide* purchaser all the information, upon making an examination of the record of attachments in the town-clerk's office, that a more particular description would. I am of opinion that these defendants, by their attachment, acquired a valid lien upon the premises in dispute, not only as against Downing, but as against his grantees ; and for that reason the plaintiff cannot maintain this action.

The plaintiff contended in the argument that the levy was bad, because it exceeded the lien acquired by the attachment. This point was not raised at the trial, and is not therefore before us, and the verdict cannot be set aside for that reason. *State* v. *Rye*, 35 N. H. 368 ; *Boyce* v. *Cheshire R. R.*, 43 N. H. 627. An objection not stated at the trial is considered as waived.

As to the other questions raised in the case, I concur in the views expressed by my brother LADD.

CUSHING, C. J. In this case, the return of the officer showed an attachment of all the real estate of Harry Downing in the town of East Kingston, and did not specifically refer to the premises in controversy. So far as I know, this question has not before being raised in this state. It is said, and I suppose truly, that the practice has been very general, and has become inveterate. There is, I apprehend, a material difference between an attachment of specific property by a description more or less general, and an attachment of real estate which does not attempt to specify anything. In the case of *Howard* v. *Daniels*, 2 N. H. 137, the return was of " the farm the defendant now lives on, with his tannery, &c., thereon."

WOODBURY, J., speaking of the object of an attachment, says,—" It is merely to caution the public and the debtor that the land attached is intended to be considered by the creditor as eventual security for his debt. A description of it, therefore, as ' the farm the defendant now lives on, with his tannery, &c., thereon,' could not fail to apprise the defendant and all others in interest what premises were intended. The return is sustained expressly on the ground that, although somewhat

general, it could not fail to point out sufficiently the very premises intended to be attached." It strikes one oddly to see this case cited as an authority to sustain a return which purposely avoids pointing out any property specifically as that attached, and aims to enclose, as with a drag-net, property to be afterwards hunted up and brought within its grasp by such evidence as may be found.

In *Bryant* v. *Osgood*, FOSTER, J., says,—" Probably an attachment of real estate, by leaving a copy of a return expressed in such general terms, would be held sufficient, if the point were distinctly raised, on the ground that since the law provides for the registration of land titles, a reference to the county records would disclose the precise property referred to in the officer's return, and *id certum est*, &c." It might, perhaps, however, be fairly suggested that the registration does by no means show all the interests in lands which may be the subject of attachment. I know of no way in which the transmission of land by descent or devise becomes matter of registration. It is also provided by statute, that by an attachment of real estate the debtor's right to receive a conveyance thereof by any contract may be held. There is also a variety of leasehold interests, which, though not required by law to be registered, yet might be valuable as subjects of attachment. The object of an attachment in general terms, like that under consideration, is not to attach anything in particular, but to leave the attachment ambulatory, so that it may go about afterwards seeking what it may lay hold of. This leaves a very wide margin for the investigation of facts outside of the registry, and it seems to me is calculated to lead to intolerable confusion. It may be that this custom is too inveterate to be destroyed by a judicial decision; but such a form of attachment certainly has none of the requisites, and is in no way calculated to produce the results, which the learned judge in *Howard* v. *Daniels* describes as the proper object to be attained.

If, however, this difficulty can be got over, there is in my mind still another. In *Bryant* v. *Osgood*, 52 N. H. 189, it is remarked by FOSTER, J., with great justice, that, " as between an attaching creditor and a *bona fide* purchaser, there can be no superiority or preference, upon any equitable considerations." It appears that, at the time when the attachment was made, the property had been sold and conveyed by Harry Downing to Ezra Downing, and by Ezra Downing to the plaintiff; but the deeds were not recorded till after the attachment. The property, therefore, on which the levy was made was not at the time of the attachment the property of Harry Downing. The sale from Harry to Ezra, and from Ezra to the plaintiff, has not been impeached on the ground of fraud. Up to this time the plaintiff must be taken to be an honest purchaser for value, and the property had wholly passed from Harry Downing to her. The plaintiff's neglect to record her deed is neither fraud nor evidence of fraud. It simply shows that she did not know what was necessary to do in order to secure her rights. The plaintiff had permitted the property to remain so situated that it was doubtless liable to attachment as the property

of Harry Downing; but it was not his property, and could not rightly be so described.

It is true, that by the statute—Gen. Stats., ch. 121, sec. 4—no deed, &c., shall be valid to hold the same against any person but the grantor and his heirs only, unless such deed, &c., be attested, acknowledged, recorded, &c. But the construction of this statute has always been that the object of this provision is to give notice, and that, in fact, unrecorded deeds are good against subsequent purchasers and attaching creditors who have notice, either actual or constructive; so that there is a wide margin for investigation outside of the record. It will be remembered that we are now talking about the sufficiency of a description. The party claiming to hold by this attachment has to show that the property was owned by Harry Downing; and it would seem not to be enough to show by the record that the title had once been in him, but it would also be necessary to go on further, and show that it had not passed from him. And he would have to show, not only that there was no record, but that he had no notice, in order to make out that as to him the property was still Harry Downing's. But whatever may be the rule as to the burden of proof in such a case, it is manifest that vagueness of the return cannot be made certain by the registry merely.

It appears to me, that, by the spirit of all the decisions, it must be considered that the ownership of that property had passed from Harry Downing to the plaintiff. It was so situated that the defendants, if they had no notice of the conveyance, could by law seize it, and apply it to the payment of their debt. But this was not because it was Harry Downing's property, but because, through the ignorance or misfortune of the plaintiff, her property was liable to be taken to pay Harry Downing's debt. Under such circumstances I think the property could not be described as Harry Downing's in the officer's return, but should have been attached as his by its specific description.

The present term has witnessed the close of a controversy which well illustrates the folly of tolerating and encouraging this slipshod way of conveyancing and attaching property. The cause I speak of was commenced in 1852. The plaintiff held two mortgage deeds, in each of which the description of the property contained these words, " on which I now live, and which I now carry on,"—being nearly the same terms as used in the officer's return in *Howard* v. *Daniels;* and the matter in controversy was, whether the land in dispute was or was not described in these terms. After many years of litigation, it was settled by the verdict of a jury that these words in one deed did describe the land in controversy, and in the other did not. It happened so that, the same fact being still open to controversy by another plaintiff, the cause was again tried, as I understand, on the same evidence, and in fact, to a great extent, on identically the same depositions, and the result was a verdict that the land dispute was not included in the other mortgage. *Id certum est quod n fieri potest.* If there is any duty imperative on courts of justice, discourage in every possible form these loose modes of doing

business. So far as I know, this question is new in New Hampshire. We cannot deprive parties of their right to make their conveyances as they see fit to do, but we have some power to require precision in the officer's returns of the attachment of property.

My learned brethren do not agree with me. While, therefore, I acquiesce in the result, it seems worth while, by a little discussion, to call attention to this view of the question. The cases which hold that, notwithstanding the peculiar terms of the statute, an unrecorded deed makes a good title against subsequent purchasers and attaching creditors with notice, are too numerous to require citation here.

In regard to the other questions raised in the case, I do not differ from my brothers LADD and SMITH.

*Judgment on the verdict.*